Michael BARRETT et al., Plaintiffs,

v.

THOROFARE MARKETS, INC. and International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 635, Defendants.

Civ. A. No. 76–61.

United States District Court, W. D. Pennsylvania.

June 22, 1978.

See also D.C., 77 F.R.D. 22.

Theodore Goldberg, Pittsburgh, Pa., for plaintiffs.

Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant Thorofare.

Joseph J. Pass, Jr., Pittsburgh, Pa., for defendant Union.

## OPINION

WEBER, Chief Judge.

The facts in this case have, to a large extent, been discussed in our prior opinion and order of November 17, 1977, on the class certification. In discussing the pending summary judgment motions filed by Defendants Thorofare and Teamster Local Union 635, we will add only those facts which have been established by the affidavits filed since that opinion. The severance pay and pension claims will be dealt with separately.

## I. SEVERANCE PAY

The Plaintiffs claim that Defendant Thorofare is obligated on an oral contract to each of them for severance pay of $100/year of service less the $40/year already paid out. Thorofare argues that it is entitled to summary judgment on this claim for the following reasons:

(1) The plaintiffs inexcusably failed to exhaust the applicable contractual grievance procedure and

(2) The plaintiffs have failed to allege facts sufficient to show the formation of a contract with Thorofare on the terms alleged and the uncontradicted evidence clearly shows that no such contract was formed.

The Union argues, in addition, that the Plaintiffs have failed to allege facts sufficient to support a claim that it breached its duty of fair representation to them.

The affidavits of Kenneth Keene, Thorofare's Director of Personnel and Labor Relations and of Robert G. Brennan, Secretary-Treasurer and principal officer of Local 635, cover these issues. Brennan states that the four local unions affected by Thorofare's 1974 warehouse lay-offs bargained together but not jointly with Thorofare representative over the impact of the lay-offs. On August 27, 1974, Thorofare agreed with Local 635 to continue its produce warehousing operation on Small Street until March 29, 1975, on the terms of the 1971 collective bargaining agreement. Under this arrangement, 14 warehouse jobs and 6 office jobs were temporarily preserved. All of the named plaintiffs accepted the offer of this continued employment with the understanding that they would eventually receive the same severance pay as would the other Local 635 members to be laid off. About September 25, 1974, Thorofare made an offer of "among other things, severance pay which amounted to $40/year of service, conditioned on acceptance of the proposed agreement by all four labor union" locals whose members would be affected by the lay-offs. On September 26, 1974, the offer was explained to a joint meeting of all four locals. However, the membership of each local voted separately on the proposal. The 20 members of Local 635 who were to continue working were not permitted to vote, but a majority of the others voted to accept the offer, 44 to 19. Even had these 20 employees participated and all voted against the proposal, the result would have been a majority for acceptance. The three other locals rejected the offer. "As a result of the outcome of the election," Brennan settled on behalf of Local 635 by signing the agreement on October 4. He interpreted the International Constitution and the Local's bylaws as giving him the authority to do so, without resubmitting the agreement to the membership. The agreement provided that each

laid-off employee would receive $40 per year of service with Thorofare. No grievance was ever filed as to the amount of the severance pay nor were any steps taken to invoke the intra-union remedies available to plaintiffs.

Kenneth Keene's affidavit is consistent with Brennan's except for one possibly significant difference. In paragraphs 8 and 9, the following statements appear:

"8. A meeting of the membership of the four Locals was allegedly held on or about September 26, 1974. I was not present at this meeting, nor was any representative of Thorofare. The representative of the four Locals later informed me that Thorofare's proposal had been rejected at this meeting.

9. As a consequence of the rejection of Thorofare's joint offer, Thorofare subsequently began negotiating separately with the four Locals concerning severance pay and entered into separate severance agreements with each of the Locals."

In light of the following discussion, we do not consider the question whether further negotiations between Thorofare and Brennan acting on behalf of Local 635, took place after the September 26 vote.

The other three locals struck before an agreement was reached on this point and eventually all their members were paid $100/year in severance pay.

█ Accepting as true those portions of the affidavits filed by the plaintiff which contain factual averments based on the affiant's personal knowledge, we find that the only disputed fact is the nature of the terms in which Thorofare's offer was explained to the affected union members at the joint meeting of September 26, 1974. This is not material to this issue. Plaintiffs claim that the union members were informed that Thorofare would pay all members of all four locals equal amounts of severance pay per year of service. From the affidavits filed by Thorofare and union, it is clear that the offer made by Thorofare to the union representatives was for a total sum to be divided among all the laid-off employees of all the locals according to the same formula; when this formula was applied each employee, in effect, would get about $40/year of service. While it is possible that both these positions are correct, even this is insufficient to support the plaintiffs' claim that a contract was formed on the terms described to them merely because their local voted in favor of acceptance. Plaintiffs do not dispute that the offer was conditioned on acceptance of all four locals and that the other three locals rejected it. This means that no contract came into existence as a result of the Local 635 vote. This is true and whether or not the results of that vote were communicated to Thorofare such communication was necessary to create a contract. Secondly, the possibility that the union representative who explained the terms of the offer to the memberships may have varied them or reported them inaccurately could not have bound Thorofare to terms other than those of its offer even if all four unions had accepted the proposal. Finally, the argument that the September 26 vote of Local 635 in favor of acceptance did not authorize Brennan to settle with Thorofare on the same terms unless all the other locals also did so has no legal consequences in terms of Thorofare's liability for damages to these plaintiffs. Even if Brennan lacked a good faith belief that he was so authorized or that he had the authority to settle with Thorofare without another vote under the union's own rules, this could do no more than invalidate the October 4 agreement *without* reviving any prior offer. What possible damages could the plaintiffs get under this theory? The difference between the severance pay they did get and what they might have gotten had the October 4 agreement not been signed? The plaintiffs cannot prove that their local would not have voted to ratify the October 4 agreement had it been submitted to them or that holding out longer would necessarily have gotten them more money. The fact of injury as well as the amount of damages on this theory must remain purely conjectural. At most, it is possible to say that if Brennan

did knowingly act without authority in signing the October 4 agreement, he could be subject to internal union discipline. Therefore, summary judgment will be entered in favor of both defendants on this ground; if there was no valid contract as claimed by the plaintiffs Thorofare cannot be liable for breach of contract nor can the Union be held for breach of its duty of fair representation by failure to enforce the contract.

## II. THE PENSION CLAIM

The plaintiffs also complain that they are or will be denied early retirement pension benefits to which they are entitled or, in the alternative, that the defendants are liable for failing to disclose to the plaintiffs, the unavailability of such early retirement pensions to an employee permanently laid off before reaching 55 years of age.

▮▮ We find the nondisclosure issue patently unmeritorious. We have in this record copies of two versions of the relevant Pension Plan—the 1971 version, attached as an exhibit to Kenneth Keene's November 1, 1976 affidavit, and the Plan as corrected in May, 1973, attached to Thorofare's brief on this motion as Exhibit E. The Preamble to the 1971 version shows that the Plan was initiated in 1951 to cover all Thorofare hourly employees. The provisions for early retirement and deferred vested retirement are substantially the same in both versions. We have no way of knowing when these key sections were drafted or changed in any significant way. It seems to us, however, that an obligation to explain the meaning of these provisions could be imposed on either Thorofare or the Union only at a time when the membership was being asked to take some action with respect to or in reliance on the terms of the Plan. The September 26 vote was not such an occasion. Furthermore, a duty to make a disclosure of the legal meaning of these clauses or of their application in any specific situation could have been violated only if either Thorofare or the Union was aware of an ambiguity and knew or should have known that a significant portion of the Union membership would misunderstand their rights thereunder. Plaintiffs have alleged no facts which would support such an argument. We are aware of no time when the Local Union or any of its members did or failed to do any act in reliance on·a misunderstanding of these provisions, and any misunderstanding which might have existed was not the responsibility of Thorofare. Legal advice could have been available to the membership at any time when a question involving interpretation of the contract arose, and there is no reason that Thorofare should have provided it. For these reasons we will grant summary judgment to the Defendants on this count: plaintiffs have failed to state a cause of action on this point under any applicate state or federal law.

▮▮ Plaintiffs' claim that Thorofare and their local are obligated to provide them with early retirement pensions fails because they have sued the wrong parties. We conclude that the Pension Committee is the only proper defendant against whom any of the relief desired on this count can be granted. According to the latest relevant version of the Plan, a Committee composed of an equal number of representatives of the union and management is responsible for administering the plan. The Committee's duties include the making of any necessary interpretation of the agreement, Section 2.02. Applications for pensions are to be made to the Committee or its designated agent, Section 2.03. None of the plaintiffs made such an application with respect to early retirement benefits. Even if a proper request had been made to the Committee, the plaintiffs could not properly sue their former employer or local union for a denial of benefits for which the Committee is solely responsible. This court has no jurisdiction over the Committee, which is an entity independent of either the union or Thorofare, and can sue or be sued in its own right, 29 U.S.C. §§ 1102, 1132(d)(1). We have no power to grant the plaintiffs any relief in this state of the case. While it might have been possible to join an indispensable party such as the Committee rath-

er than to dismiss a case, Fed.R.Civ.P. 19, where those who are original defendants as here are not even real parties in interest or proper parties, we see no justification for such a course. Therefore, summary judgment will be entered in favor of both defendants on this count also and the case will be dismissed. An appropriate order will be entered.

■ The defendants have requested that the plaintiffs be required to pay their attorney's fees on the ground that this action was obviously frivolous and brought in bad faith. We will deny this motion because, in our opinion, although the plaintiffs' legal claims were weak, their sense of grievance was undeniably strong and we cannot find this to be either frivolity or bad faith.

■ Finally, our previous order certified a class on the severance pay issue and denied a class certification on the pension claim. In that order, we required plaintiffs to prepare and submit a proposed notice to the class members. This was never done. After the deadline for the filing of this notice form had passed, the plaintiffs' counsel informed the court by letter that the plaintiffs wished to withdraw their certification motion until any summary motions were disposed of. We see no point at this time in requiring counsel to send members of the class a notice of the suit brought on their behalf along with the information that they have already lost. Therefore, we will decertify the class at this time on the ground that neither the plaintiffs nor their counsel have adequately represented the interests of the class.