**INTERNATIONAL UNION, United Automobile Aerospace and Agricultural Implement Workers of America, et al.**

v.

**AUTO GLASS EMPLOYEES FEDERAL CREDIT UNION, et al.**

No. 3–92–0821.

United States District Court, M.D. Tennessee, Nashville Division.

June 22, 1994.

**714**

Lynn Allen Agee, Susan Kay Bradley, Agee, Allen, Godwin, Morris & Laurenzi, Murfreesboro, TN, for plaintiffs.

Charles Eric Stevens, Trabue, Studivant & DeWitt, Nashville, TN, for defendants Auto Glass Employees Federal Credit Union, National Credit Union Ass'n Bd., Allen Carver.

William Randall O'Bryan, Jr., Charles Eric Stevens, Jeffrey Zager, Trabue, Studivant & DeWitt, Nashville, TN, for defendant National Credit Union Administration.

Ernest D. Bennett, III, Taylor, Philbin, Pigue, Marchetti & Long, Nashville, TN, for defendant Jerry Sweet.

### MEMORANDUM

HIGGINS, Judge.

The Court has before it cross motions for partial summary judgment on behalf of the defendants,[1] Auto Glass Employees Federal Credit Union (AGEFCU) and the National Credit Union Administration Board (the Board) (filed August 17, 1993; Docket Entry No. 46),[2] and the plaintiffs, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local 737 (the Union), Martha Poston, Virginia Ligon, Sue Doss, Brenda Maley, Glynda Johnson, Tamala Lavender, Lucy Pinson, Janice Weatherly, Phyllis Law, Diane Armonat, and Mary Peoples (filed September 9 and 20, 1993; Docket Entry Nos. 56 and 65)[3] for partial summary judgment. The Court also has before it the defendants' memorandum (filed August 17, 1993; Docket Entry No. 47) in support; the plaintiffs' memoranda (filed September 9 and 20, 1993; Docket Entry Nos. 57 and 66) and their supplemental memorandum (filed January 5, 1994; Docket Entry No. 77) in support.

The Court has subject matter jurisdiction over the plaintiffs' claims pursuant to 28 U.S.C. § 1331.

For the reasons discussed below, the Court shall grant the defendants' motion for partial summary judgment in part and deny it in part. In addition, the Court shall grant the plaintiffs' partial summary judgment motion in part and deny it in part.

### I.

This cause of action arises out of the repudiation of a collective bargaining agreement, pursuant to the Federal Credit Union Act (FCUA), 12 U.S.C. §§ 1751–1786, by the conservator of a federal credit union. The plaintiffs, the Union and numerous individuals who are or were employees of defendant AGEFCU, originally filed their action against AGEFCU and its conservator, the National Credit Union Administration (NCUA), alleging numerous statutory and

---

1. In their motion, the defendants also seek to strike portions of the plaintiffs' jury demand.

2. Jerry Sweet, individually and in his official capacity as agent of the NCUA, was added as a defendant in the plaintiffs' first amended complaint (filed October 16, 1992; Docket Entry No. 6). Mr. Sweet was an agent of the NCUA who was appointed president and plan administrator of the AGEFCU after the NCUA took over as conservator of the credit union. See id. ¶ 6. The plaintiffs' cause of action against Mr. Sweet, both individually and in his official capacity, was subsequently dismissed with prejudice. Order (entered February 16, 1994; Docket Entry No. 82).

3. The plaintiffs erroneously cited one of the relevant federal statutes as the "National Credit Union Act" in their first motion (Docket Entry No. 56) and accompanying memorandum (Docket Entry No. 57). They subsequently corrected the reference to the federal statute as the "Federal Credit Union Act" in their second motion (Docket Entry No. 65) and accompanying memorandum (Docket Entry No. 66).

constitutional violations.[4] Complaint (filed September 14, 1992; Docket Entry No. 1). The plaintiffs filed their amended complaint (Docket Entry No. 6) on October 16, 1992, thereby adding Jerry Sweet, individually and in his official capacity as agent of the NCUA, as a defendant as well as posing a jury demand.[5] The plaintiffs subsequently moved (motion filed February 16, 1993; Docket Entry No. 16) to join H. Allen Carver[6] and the Board as defendants, which was granted by the Court. *See* order (Docket Entry No. 19) entered February 23, 1993. The plaintiffs' second amended complaint (Docket Entry No. 22), which added the Board and Mr. Carver individually and in his official capacity as agent of the NCUA as defendants, was filed on March 9, 1993.

On March 30, 1993, defendants NCUA and Mr. Carver in his individual capacity filed a motion (Docket Entry No. 27) to dismiss the plaintiffs' action pursuant to Fed.R.Civ.P. 12(b)(6). The Court referred this motion to the Magistrate Judge for consideration, submission of proposed findings of fact and recommendation for disposition, *see* order (Docket Entry No. 32) entered April 26, 1993, pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge recommended that the motion to dismiss be granted with respect to defendants NCUA and Carver. Report and Recommendation (entered July 7, 1993; Docket Entry No. 38). The Court approved and adopted the Report and Recommendation in its entirety, *see* order (Docket Entry No. 43) entered August 12, 1993, thereby dismissing the plaintiffs' action as to defendants NCUA and Mr. Carver in his individual capacity.

The plaintiffs' motion (filed May 24, 1993; Docket Entry No. 34) to file a third amended complaint was granted by the Court (Docket Entry No. 45) on August 12, 1993. The amendments to the complaint, *see* third amended complaint (filed August 20, 1993; Docket Entry No. 51), added claims on behalf of certain plaintiffs under Title VII and the Age Discrimination in Employment Act (ADEA).[7]

The facts giving rise to this action began on December 16, 1991, when the Board issued an order of conservatorship, pursuant to 12 U.S.C. § 1786(h), thereby appointing itself conservator for the AGEFCU. On January 3, 1992, the Board assumed all authority for the credit union's operations in its capacity as the AGEFCU's conservator. Mr. Sweet, who was appointed by the Board as president of AGEFCU and administrator of its pension benefit plan, took a number of employment actions[8] which the Union considered to be violative of the collective bargaining agreement in effect between AGEFCU employees and the Union. A meeting of the Board's agents and union representatives was held on March 13, 1992, during which the Board proposed changes to the collective bargaining agreement which were deemed necessary for rehabilitation. The Union did not accept the proposed changes and the Board provided the Union with written notice of its repudiation of the collective bargaining agreement on March 20, 1992. Implementation of the employees' new wages and benefits occurred on April 1, 1992, and following termination of the AGEFCU Money Purchase Plan and

---

4. The complaint alleged violations of the First and Fourteenth Amendments of the Constitution, Article 1, Section 23 of the Tennessee Constitution, the Federal Credit Union Act, Labor Management Relations Act and the Employee Retirement Income Security Act. The amended complaint also alleged violation of the Fifth Amendment of the Constitution. *See* amended complaint (Docket Entry No. 6).

5. The plaintiffs' cause of action against defendant Sweet was dismissed with prejudice by agreed order entered February 16, 1994 (Docket Entry No. 82).

6. Mr. Carver was regional director and agent of the NCUA.

7. In granting the plaintiffs' motion to file the third amended complaint, the Court precluded any allegations against defendant Carver in his individual capacity, since the action against him in his individual capacity was dismissed by the entry of a separate order. *See* order (Docket Entry No. 45) entered August 12, 1993.

8. As examples, the plaintiffs cite changes in the employee dress code, conversion of the offices to a smoke-free environment, changes in employee insurance benefits and premiums, and abolition of the collective bargaining agreement's grievance procedure. *See* plaintiffs' memorandum (Docket Entry No. 66) at 2.

Trust on April 21, 1992, vested benefits were paid to the plan participants.[9]

In their summary judgment motion, the plaintiffs contend that the defendants' conduct in unilaterally changing their employment conditions and in repudiating the collective bargaining agreement violated the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq., and the Federal Credit Union Act (FCUA). 12 U.S.C. §§ 1751–1786. They state that the Board had no authority to repudiate their collective bargaining agreement because it is not an executory contract under the FCUA. Memorandum (Docket Entry No. 66) at 4–9. In addition, the plaintiffs contend that the defendants violated their constitutional rights by depriving them of property without due process. Id. at 12–14. The plaintiffs further assert that the Union is a proper party to file this action pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq., id. at 15–16, and that the AGEFCU is a proper ERISA defendant in light of its control over the administration of the pension plan. Id. at 16–17.

In contrast, the defendants contend that the FCUA supersedes any alleged violations of the NLRA or the LMRA and that its repudiation of contracts provision encompasses collective bargaining agreements. Memorandum (Docket Entry No. 47) at 5–9. In addition, the defendants assert that the Union lacks standing to assert an ERISA claim, id. at 9–10, and that AGEFCU is not a proper party defendant to the plaintiffs' ERISA claims. Id. at 10. Finally, the defendants claim that the state law claim of wrongful termination is pre-empted by ERISA, id. at 11–12, and that the plaintiffs have failed to state a cause of action for intentional interference with a contract under Tenn.Code Ann. § 47–50–109. Id. at 13.

## II.

As provided by Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202, 211 (1986). In order to prevail on a summary judgment motion, the moving party bears the burden of proving the absence of a genuine issue of material fact concerning an essential element of the opposing party's action. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274 (1986); Davidson & Jones Dev. Co. v. Elmore Dev. Co., 921 F.2d 1343, 1349 (6th Cir.1991); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir.1989).

In this action, both parties submit that the questions posed by their respective partial summary judgment motions are not subject to any genuine issue of material fact, thereby rendering them appropriate for the Court's determination as a matter of law. See defendants' memorandum (Docket Entry No. 47) at 3–4; plaintiffs' memorandum (Docket Entry No. 66) at 3–4. Because of the absence of a genuine issue of material fact, a jury or judge, as fact finder, is not necessary to resolve the parties' differing versions of the truth. Liberty Lobby, 477 U.S. at 249, 106 S.Ct. at 2510, 91 L.Ed.2d at 212; First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569, 592 (1968). Rather, resolution of the parties' partial summary judgment motions in such a situation will depend upon the Court's determination of the questions of law presented.

## III.

At issue in the plaintiffs' claims concerning the defendants' repudiation of the collective bargaining agreement is the interplay of several federal statutes, namely, the FCUA, 12 U.S.C. §§ 1751–1795i, the LMRA, 29 U.S.C. § 141 et seq., and the NLRA, 29 U.S.C. § 151 et seq. While the defendants contend that the authority vested in the Board, as conservator, by the FCUA to repudiate executory contracts supersedes any alleged viola-

---

9. The plaintiffs contend that pension benefits of some employees have been withheld. They also allege that as a result of the repudiation, several employees received reduced wages, while others were either terminated, constructively discharged, or permanently laid off.

tions of the LMRA or NLRA, the plaintiffs assert that collective bargaining agreements are not ordinary contracts and are therefore not encompassed by the FCUA's repudiation provision. They contend that because the plaintiffs' collective bargaining agreement is not subject to repudiation, the defendants' actions violated the NLRA and deprived them of property without due process.

 In considering the issue of whether the FCUA's repudiation provision includes collective bargaining agreements, the Court must first examine the relevant statute. As noted by the United States Supreme Court, in determining the scope of a statute, the Court looks first to the statutory language and attributes ordinary meaning to the words used. *Moskal v. United States*, 498 U.S. 103, 108, 111 S.Ct. 461, 465, 112 L.Ed.2d 449, 458 (1990). Statutory construction requires the court's examination of the plain language of the statute in order to determine its meaning. *United States v. Ron Pair Enters.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290, 298 (1989); *Grand ex rel. United States v. Northrop Corp.*, 811 F.Supp. 333, 335 (S.D.Ohio 1992). In instances where the statutory language is clear, the court's duty is to enforce the law according to its terms. *Ron Pair Enters.*, 489 U.S. at 241, 109 S.Ct. at 1030, 103 L.Ed.2d at 298. In addition to the particular statutory language used, the statute's design and its object and policy are also important variables in statutory construction. *Crandon v. United States*, 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132, 140 (1990); *United States v. Honaker*, 5 F.3d 160, 161 (6th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1226, 127 L.Ed.2d 571 (1994).

In the event that two federal statutes conflict, courts generally assume that Congress is aware of existing law when it enacts new legislation, *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32, 111 S.Ct. 317, 325, 112 L.Ed.2d 275, 291 (1990), and as a result, "the statute last in time prevails as the most recent expression of the legislature's will." *Boudette*

*v. Barnette*, 923 F.2d 754, 757 (9th Cir.1991). As noted by one court, "[i]t is presumed that when Congress drafts a statute, it does so with full knowledge of the existing law and with great care for the precise language which must be used to achieve the desired result." *Federal Elec. Corp. v. Dunlop*, 419 F.Supp. 221, 225 (M.D.Fla.1976).

### A. Federal Credit Union Act

 Congress enacted the FCUA in order to establish a system of credit unions to facilitate stabilization of the nation's credit structure and to achieve increased availability of loans. *Branch Bank & Trust Co. v. National Credit Union Admin. Bd.*, 786 F.2d 621, 625–26 (4th Cir.), *cert. denied*, 479 U.S. 1063, 107 S.Ct. 948, 93 L.Ed.2d 997 (1986); *National Temple Non–Profit Corp. v. National Temple Community Federal Credit Union*, 603 F.Supp. 807, 809 (D.C.Pa.1985). The FCUA created the NCUA, which is an independent executive branch agency managed by the Board. 12 U.S.C. § 1752a(a), (d). The NCUA investigates applications from credit unions seeking a federal charter and grants such a charter in appropriate cases.[10]

A federal credit union is statutorily defined as "a cooperative association organized in accordance with the provisions of this chapter for the purpose of promoting thrift among its members and creating a source of credit for provident or productive purposes." 12 U.S.C. § 1752(1). Each federal credit union remains under the Board's supervision and, as such, is subject to examination by the Board and required to submit annual financial reports. 12 U.S.C. § 1756.

The FCUA specifically provides as follows:

(1) The Board may, *ex parte* without notice, appoint itself as conservator and immediately take possession and control of the business and assets of any insured credit union in any case in which—

---

**10.** The NCUA may grant such a charter if it finds that the group possesses an appropriate occupational, associational, community or similarly common bond, that the subscribers are of good character and may represent the group, and that

establishment of a credit union is economically prudent. *See* 4A *Federal Procedure* § 8:832 (George L. Bounds et al. eds., 1990). Credit unions which receive a federal charter are provided with federal depository insurance.

(A) the Board determines that such action is necessary to conserve the assets of any insured credit union or to protect the Fund or the interests of the members of such insured credit union;

12 U.S.C. § 1786(h)(1)(A). The Board's powers as conservator are quite broad and encompass taking such action as may be "(i) necessary to put the credit union in a sound and solvent condition; and (ii) appropriate to carry on the business of the credit union and preserve and conserve the assets and property of the credit union." 12 U.S.C. § 1787(b)(2)(D). The Act provides for further incidental powers which allow the Board to "take any action authorized by this chapter, which the Board determines is in the best interests of the credit union, its account holders, or the Board." 12 U.S.C. § 1787(b)(2)(G).

Furthermore, the FCUA sets forth provisions concerning contracts which were entered into by the credit union prior to the conservator's appointment. 12 U.S.C. § 1787(c). These provisions specifically state that, in its discretion, the conservator may disaffirm or repudiate a contract if its performance by the credit union is determined to be burdensome and such repudiation "will promote the orderly administration of the credit union's affairs." 12 U.S.C. § 1787(c)(1). The conservator must exercise this right to repudiate within a reasonable period of time following its appointment. 12 U.S.C. § 1787(c)(2). The liability for repudiation is limited to actual direct compensatory damages which are determined as of the date of the conservator's appointment. 12 U.S.C. § 1787(c)(3)(A).

▮ The Court finds that the statutory language, on its face, is broad enough to encompass collective bargaining agreements, which are inarguably contractual arrangements. The statute explicitly empowers the Board to take whatever action is necessary to put the credit union in a sound and solvent

condition, appropriate to carry on the credit union's business and preserve its assets and property. 12 U.S.C. § 1787(b)(2)(D).

The plaintiffs resist this construction of the language on the grounds that a collective bargaining agreement is a different and more important type of contract. In support of this contention, they cite *John Wiley and Sons v. Livingston*, 376 U.S. 543, 550, 84 S.Ct. 909, 914–15, 11 L.Ed.2d 898, 905 (1964), as standing for the proposition that "federal law essentially requires the existence of a collective bargaining agreement, and that such an agreement is not simply an expression of mutual agreement between two parties." Memorandum (Docket Entry No. 66) at 4–5. However, rather than setting forth the expansive conclusion suggested by the plaintiffs, *John Wiley* simply establishes that the duty to arbitrate may survive in some situations in which the ownership or corporate structure of an enterprise changes.[11] Indeed, inclusion of collective bargaining agreements within the scope of the FCUA is more consistent with the explicit statutory language empowering the NCUA to take any necessary and appropriate action to rehabilitate a federal credit union. Rather than remaining silent, one would expect Congress to expressly make an exception for collective bargaining agreements, in light of their unique and important role, if the FCUA was not to encompass such contractual arrangements.

To the extent that the Board's repudiation of a collective bargaining agreement comprises an unfair employment practice and thereby conflicts with the NLRA, the FCUA is presumed to apply since it is the more recent statutory enactment. As noted by the defendants, memorandum (Docket Entry No. 47) at 7, when enacting the FCUA in 1989, Congress was undoubtedly cognizant of the relevant provisions of the NLRA, 29 U.S.C. § 158, which were enacted more than fifty

---

**11.** Although reiterating that the duty to arbitrate must be founded on a contract, the Supreme Court found that an unconsenting successor to a contracting party may be bound to a contractual arbitration provision. *John Wiley*, 376 U.S. at 550, 84 S.Ct. at 915, 11 L.Ed.2d at 905. In

arriving at this conclusion, the Court recognized the unique status and function of a collective bargaining agreement, as well as policy considerations which favor arbitration under such circumstances. *Id.*

years before.[12] The Court interprets the absence of any language exempting collective bargaining agreements from a conservator's power of contract repudiation to mean that Congress did not intend to create such an exemption.

The plaintiffs seek to invoke liability by offering an interpretation of the FCUA which is narrower than the scope of its language. The Court finds that this interpretation must be rejected, not only because the FCUA includes no language which excludes collective bargaining agreements, but also because it is inconsistent with Congress' general purpose of facilitating stabilization of the credit union structure and increasing availability of loans. Both the plain meaning of the statutory language and its underlying purpose support the conclusion that the FCUA's repudiation provision is applicable to collective bargaining agreements.

This conclusion is further reinforced by Congress' actions in specifically excluding collective bargaining agreements in other statutes which provide for contract repudiation. Moreover, the Supreme Court previously held that the NLRA did not take precedence over a later statutory enactment, Section 365(a) of the Bankruptcy Code. In *NLRB v. Bildisco*, 465 U.S. 513, 521–22, 104 S.Ct. 1188, 1194, 79 L.Ed.2d 482, 492–93 (1983), the Supreme Court determined that the Bankruptcy Code provision allowing a debtor-in-possession to repudiate executory contracts encompassed collective bargaining agreements. Significantly, in 1985 Congress amended the Bankruptcy Code to exempt collective bargaining agreements from the contract repudiation provision. Nonetheless, despite Congress' exposure to the precise issue of whether contract repudiation encompasses collective bargaining agreements, Congress did not include a similar exemption when enacting the FCUA in 1989.

As was the case in *Crandon*, because a literal reading of the FCUA is consistent with Congressional purpose in enacting the statute and is therefore "in 'harmony with what is thought to be the spirit and purpose of the act,' this case presents none of the 'rare and exceptional circumstances' that may justify a departure from statutory language." 494 U.S. at 168, 110 S.Ct. at 1006, 108 L.Ed.2d at 146 (citations omitted). Accordingly, the Court finds that the FCUA takes precedence over the NLRA and specifically permits unilateral repudiation of collective bargaining agreements by the Board in its efforts to rehabilitate a failing federal credit union. As a result, the Board's actions in making unilateral changes in the terms and conditions of plaintiffs' employment do not comprise unlawful employment practices in violation of the NLRA.[13]

### B. Standard of consideration before repudiation

■ The plaintiffs further contend that, if collective bargaining agreements are subject to a conservator's repudiation, a stricter standard of consideration prior to repudiation is required as a result of the special nature of such contracts. Memorandum (Docket Entry No. 66) at 10. They assert that the standard of consideration endorsed by the Supreme Court in *Bildisco* should apply in this situation, which would require that the conservator establish the following elements: (1) the collective bargaining agreement is burdensome; (2) the equities balance in favor of repudiation; (3) reasonable efforts to negotiate a voluntary modification have been made without success; and (4) policy would be served by the repudiation. *Id.* at 11. *See Bildisco*, 465 U.S. at 526–27, 104 S.Ct. at 1196, 79 L.Ed.2d at 491.

The Court agrees with the defendants' assertion that the plaintiffs' reliance on *Bildisco* is misplaced, particularly since several significant differences distinguish the *Bildisco* situation from that before the Court. Although the Bankruptcy Code requires court approval of the repudiation decision, the

---

12. The Supreme Court has noted that "it is always appropriate to assume that our elected representatives, like other citizens, know the law." *Cannon v. University of Chicago*, 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560, 575–76 (1979).

13. The Court notes that this conclusion renders moot the second issue posed by the plaintiffs in their motion (Docket Entry No. 65) for partial summary judgment, which alleges that the AGEFCU's actions violated the NLRA. *See* memorandum (Docket Entry No. 66) at 9–10.

FCUA permits a conservator to use its discretion in repudiating contracts and requires no court approval. Moreover, Section 365(a) of the Bankruptcy Code provides no standards governing contract repudiation, while the FCUA explicitly provides a governing standard. 12 U.S.C. § 1787(c). The FCUA expressly authorizes a conservator to repudiate a contract if its performance is determined to be burdensome and its repudiation "will promote the orderly administration of the credit union's affairs." 12 U.S.C. § 1787(c)(1).

The Court finds that imposition of the Bankruptcy Code's standard for repudiation is simply inapplicable to repudiation pursuant to the FCUA, which explicitly sets forth its own standard. As a result, the Court shall deny that portion of the plaintiffs' partial summary judgment motion.

## IV.

 The plaintiffs also assert that the defendants violated the due process rights of some plaintiffs by terminating their employment without prior notice or a hearing. Memorandum (Docket Entry No. 66) at 14. The validity of their constitutional claim hinges upon the plaintiffs having a property right in continued employment. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494, 501 (1985). As noted by the Supreme Court, such "[p]roperty interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....'" *Id.* (citing *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972)).

As was the case in *Chilingirian v. Boris*, 882 F.2d 200, 204 n. 6 (6th Cir.1989), the plaintiffs' reliance on *Loudermill*, which dealt with due process rights of individuals deprived of property rights in continued public employment recognized under state law, is misplaced since no such rights are implicated in this action. The plaintiffs attempt to invoke the NLRA as the independent source

which confers property rights since it prohibits an employer from making unilateral changes in terms and conditions of employment when a collective bargaining agreement exists, which in this case provided that no employee would be terminated without just cause. In essence, the plaintiffs' argument is that "the collective bargaining agreement creates a property interest in continued employment, and the NLRA provides federal protection for this property interest." Memorandum (Docket Entry No. 66) at 14.

However, this argument ignores the fact that a collective bargaining agreement is substantially different from a property interest in employment which is conferred by a state or federal legislature. In this instance, the collective bargaining agreement was a contractual relationship between a private employer and its employees and, as such, was incapable of conferring any constitutional property or due process right upon the employee. *See, e.g., Meleen v. Hazelden Found.*, 740 F.Supp. 687, 893 (D.Minn.1990), *aff'd*, 928 F.2d 795 (8th Cir.1991).

Likewise, the NLRA does not confer such a property interest in employment. Rather, the NLRA safeguards employees' rights to organize, bargain collectively and strike, 29 U.S.C. § 157, and prohibits an employer's interference with exercise of those rights. 29 U.S.C. § 158. While the NLRA also prohibits retaliatory discharge, 29 U.S.C. § 158(a)(4), and refusal to bargain collectively, 29 U.S.C. § 158(a)(5), the statute does not dictate the terms of the collective bargaining agreement, nor does it prohibit termination for other than cause. Rather, it simply establishes a framework within which the parties condition their working relationship.

The NLRA's establishment of employees' rights to self-organize and bargain collectively is substantively different from a welfare recipient's claim of entitlement to welfare benefits that is grounded in the statute defining eligibility. *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561. Although the NLRA clearly articulates and protects the employee's right to bargain collectively,[14]

---

**14.** The LMRA defines collective bargaining as "the performance of the mutual obligation of the

employer and the representative of the employees to meet at reasonable times and confer in

it does not confer any entitlement to employment nor any other fruits of the collective bargaining negotiations. Thus, the NLRA is not the independent source of law, comprising the "rules or understandings that secure certain benefits and that support claims of entitlement to those benefits" of an independent source, required by the Supreme Court. *Id.*

## V.

The Court must determine who are the proper parties in this ERISA action, in light of the parties' disagreement concerning the following specific issues: (1) whether the plaintiff, the Union, has standing to sue as a representative of the individual employee plaintiffs under ERISA; and (2) whether AGEFCU is an appropriate ERISA defendant.

## A.

■ The defendants contend that the Union lacks standing to assert claims on behalf of its union members under ERISA. Defendants' memorandum (Docket Entry No. 47) at 9–10. In contrast, the plaintiffs insist that union representation of employees in this situation is appropriate and, therefore, the Union has standing to sue on behalf of the individual employees pursuant to ERISA. Plaintiffs' memorandum (Docket Entry No. 66) at 15–16.

The Court once again looks to the statutory language in making its determination. ERISA specifically provides that a civil action may be brought by a participant, beneficiary, fiduciary or the Secretary of Labor. 29 U.S.C. § 1132. *See also Waxman v. Luna,* 881 F.2d 237, 240 (6th Cir.1989) (plaintiff must be either participant or beneficiary to bring ERISA action). The statute includes a separate section which defines each of these terms. A "participant" is defined as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may

become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). The term "beneficiary" refers to "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). The pertinent portions of ERISA provide that a person is a "fiduciary" to the extent he or she exercises discretionary authority or control over the plan's management, exercises any authority or control concerning management or disposition of the plan's assets, or has any discretionary authority or responsibility in the plan's administration. 29 U.S.C. § 1002(21)(A)(i), (iii).

It is clear that the Union is not a participant as defined by ERISA, since it is not an employee, former employee, member or former member of an employee organization with eligibility to receive benefits. It is conceivable that, under certain circumstances, the Union could be a beneficiary or fiduciary since ERISA further clarifies that the term "person" as used therein encompasses an employee organization, 29 U.S.C. § 1002(9), which specifically includes "any labor union" within its definition. 29 U.S.C. § 1002(4). However, there has been no claim that the Union is designated by any participant as a beneficiary nor any suggestion that the Union possesses or has exercised any responsibility or authority concerning the employee benefit plan, its administration or management, or disposition of its assets. Therefore, the Union, simply by virtue of its status as a labor union, does not fall within those who are designated by the statute as capable of bringing an ERISA action. *See, e.g., New Jersey State AFL–CIO v. New Jersey,* 747 F.2d 891, 893 (3d Cir.1984) ("It is clear from the statute that labor unions are neither participants nor beneficiaries").

Nonetheless, the plaintiffs contend that the rationale employed by the United States Court of Appeals for the District of Columbia Circuit in *OPEIU v. FDIC,* 962 F.2d 63 (D.C.Cir.1992), is applicable in this action

good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement

reached if requested by either party." 29 U.S.C. § 158(d). The statute goes on to state that "such obligation does not compel either party to agree to a proposal or require the making of a concession." *Id.*

and, therefore, the Union should be allowed to sue as a representative of the individual union members. In *OPEIU,* the Court found that union representation of employees in claims under the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA), 12 U.S.C. § 1821, was appropriate despite the fact that a labor organization did not fall within the technical definitions of "claimant" or "creditor" under the statute. 962 F.2d at 67.

In this action, the plaintiffs suggest that because the Union, which is the federally sanctioned representative of the individual employees, negotiated the contract delineating the pension plan benefits, it is best qualified to represent the employees in claims based on those benefits. Memorandum (Docket Entry No. 66) at 16. However, the Court is unpersuaded by the plaintiffs' proffered analogy, particularly in view of the significant differences between the federal statutes at issue in *OPEIU* and the present cause of action. As an initial matter, the Court notes that the FIRREA does not define the terms "claim," "claimant," or "creditor" within its statutory language. *See OPEIU,* 962 F.2d at 66. In addition, as noted by the District of Columbia Circuit, "FIRREA's very text appears to contemplate claims beyond those by 'creditor[s] ... on the ... books' to whom statutory notice must be sent." *Id.* at 67.

In contrast, ERISA's statutory framework lists those persons empowered to bring a civil action with particularity, 29 U.S.C. § 1132, and devotes an entire section to the specific definitions to be used in application of the statute. 29 U.S.C. § 1002. Significantly, although the term "employee organization" is specifically defined, 29 U.S.C. § 1002(4), it remains conspicuously absent in the delineation of those who may bring a civil action. Despite the fact that an ERISA claim may derive from a collective bargaining agreement negotiated by a union, Congress has obviously chosen not to include a labor

union as an appropriate party to vindicate employees' rights under ERISA.

In addition, as pointed out by the District of Columbia Circuit in its *OPEIU* analysis, the common use in bankruptcy law of such terms as "claimant" and "creditor" makes it a more valuable source of law from which to draw in order to clarify and apply FIRREA. 962 F.2d at 68. In *OPEIU,* the Court considered it "significant that bankruptcy courts appear routinely to permit unions to file claims for benefits on employees' behalf." *Id.* Not only is there no need to draw from another source of law in this action since the relevant statute clearly sets forth who may bring an ERISA action, there is before the Court no evidence of a similar historical connection which would justify going beyond the statutory language and allowing a union to file an ERISA claim on behalf of an individual member.

Accordingly, the Court finds that because the Union does not fall within the categories enumerated by the statute as having the power to bring an ERISA action, it has no standing and the defendants' motion for partial summary judgment on this issue shall be granted.

### B.

▮▮▮▮ The defendants further contend that AGEFCU is not a proper party defendant to the plaintiffs' claims pursuant to 29 U.S.C. § 1132(a)(1)(B) [15] because it is merely the current or former employer of the individual plaintiffs and does not administer the plan. Defendants' memorandum (Docket Entry No. 47) at 10. The plaintiffs, however, assert that AGEFCU is an appropriate ERISA defendant because it has control and plays an active role in administering the plan. Plaintiffs' memorandum (Docket Entry No. 66) at 16–17.

▮▮▮▮ Ordinarily, an employer which established an employee benefit plan is not a

---

15. The defendants do not argue that AGEFCU is not a proper party defendant for the plaintiffs' retaliatory discharge claims, pursuant to 29 U.S.C. § 1140. Since an employer is the liable party defendant in an action alleging retaliatory firing as a result of one's exercise of rights protected by ERISA, *Bittner v. Sadoff and Rudoy Indus.,* 490 F.Supp. 534, 536 (E.D.Wis.1980), AGEFCU is a proper party defendant in regard to plaintiff Lavender's retaliatory discharge claim.

proper party defendant to an ERISA action to recover benefits under the plan. 27 *Federal Procedure* § 61:177 (Thomas J. Goger et al. eds., 1984). The proper defendants are the employee benefit plan itself and the trustees who administer the plan, *Carter v. Montgomery Ward and Co.,* 76 F.R.D. 565, 568 (E.D.Tenn.1976), and the employer may not be made a party defendant without evidence that it controls and/or administers the plan. *Foulke v. Bethlehem 1980 Salaried Pension Plan,* 565 F.Supp. 882, 883 (E.D.Penn.1983); *Boyer v. J.A. Majors Co.,* 481 F.Supp. 454, 458 (N.D.Ga.1979). The United States Court of Appeals for the Sixth Circuit has specifically held that the employer is not a proper party defendant in an ERISA action concerning benefits unless its control over administration of the plan is demonstrated. *Daniel v. Eaton Corp.,* 839 F.2d 263, 266 (6th Cir.), *cert. denied,* 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988).

ERISA specifically defines the term "administrator" as "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A)(i). The statute further provides that the plan sponsor is the administrator in the event no administrator is designated by the operational documents.[16] 29 U.S.C. § 1002(16)(A)(ii). *See also Boyer,* 481 F.Supp. at 458 ("only if an administrator is not so designated is the 'plan sponsor' (the employer) deemed to be the administrator") (citing 29 U.S.C. § 1002(16)).

Despite their claim that AGEFCU had control and took an active part in administering the pension plan, the plaintiffs have failed to identify specific evidence in support of this assertion. However, the Court notes the existence of documents written on AGEFCU letterhead which detail modifications undertaken by AGEFCU. A number of these documents were written and circulated by Jerry Sweet, apparently in his official capacity as president of AGEFCU. *See* complaint (Docket Entry No. 1), exhibits A–C, G. As was the case in *Foulke,* 565 F.Supp. at 883, such documents comprise evidence that AGEFCU may have taken an active role in the administration of the benefits programs offered to its employees.

Based upon the evidence before the Court, AGEFCU's motion for partial summary judgment on the basis that it is not a proper party defendant in the plaintiffs' ERISA action will be denied. *Id.; Barrett v. Thorofare Markets, Inc.,* 452 F.Supp. 880, 884 (W.D.Penn.1978); *Carter,* 76 F.R.D. at 568.

## VI.

■ The defendants contend that the state wrongful termination claim of plaintiff Tamala Lavender should be dismissed because it is pre-empted by ERISA.[17] The Court finds that this contention has substantial merit.

In order to promote uniformity in the administration of employee benefit plans under ERISA, Congress enacted a pre-emption provision that prohibits the application of any state law which "relates" to the benefit plan. The statutory language provides as follows:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title....

29 U.S.C. § 1144(a). Therefore, a state law which relates to an employee benefit plan is pre-empted by ERISA. The Supreme Court has clarified the meaning of the phrase "relates to" in the context of ERISA, defining it as having "a connection with or reference to" an employee benefit plan. *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 482, 112 L.Ed.2d 474, 484 (1990) (citing *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490, 501 (1983)). Thus, ERISA pre-

---

**16.** The statute also provides for the contingency where the plan sponsor cannot be identified, indicating that in such a situation, the administrator is "such other person as the Secretary may by regulation prescribe." 29 U.S.C. § 1002(16)(A)(iii).

**17.** The plaintiffs have offered no response to this assertion.

emption may apply "even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll–Rand*, 498 U.S. at 139, 111 S.Ct. at 482, 112 L.Ed.2d at 484.

The Supreme Court has specifically held that ERISA preempts a wrongful termination claim which requires that a court's inquiry be directed to the plan. *Id.* at 140, 111 S.Ct. at 483, 112 L.Ed.2d at 485. In this cause of action, plaintiff Lavender contends that her employment was terminated in retaliation for submitting health insurance claims. Third amended complaint (Docket Entry No. 51) ¶ 25. This state claim obviously "relates to" plaintiff Lavender's employee benefits plan by virtue of the claim's obvious connection with or reference to the plan.

In *Ingersoll–Rand*, the Supreme Court also found that, even if express pre-emption were not present, the state cause of action would be pre-empted "because it conflicts directly with an ERISA cause of action." 498 U.S. at 143, 111 S.Ct. at 484, 112 L.Ed.2d at 486. As in *Ingersoll–Rand*, plaintiff Lavender's wrongful discharge claim falls squarely within the purview of ERISA, which provides in pertinent part as follows:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan....

29 U.S.C. § 1140. Thus, the statutory language explicitly protects a participant from termination in retaliation for exercise of rights under the employee benefits plan. As noted by the Supreme Court, Congress intended ERISA's civil enforcement mechanism, 29 U.S.C. § 1132(a), to be "the exclusive remedy for rights guaranteed under ERISA, including those provided by § 510 [29 U.S.C. § 1140]." *Ingersoll–Rand*, 498

U.S. at 144, 111 S.Ct. at 485, 112 L.Ed.2d at 487.

As was the case in *Ingersoll–Rand*, plaintiff Lavender's state wrongful discharge cause of action purports to provide a remedy for the violation of rights expressly protected by ERISA, 29 U.S.C. § 1140, the exclusive enforcement of which must be pursuant to 29 U.S.C. § 1132(a). 498 U.S. at 145, 111 S.Ct. at 486, 112 L.Ed.2d at 488. Since such rights are protected and enforceable pursuant to ERISA, pre-emption applies. Accordingly, the defendants' motion for partial summary judgment on plaintiff Lavender's state wrongful discharge claim shall be granted.

## VII.

In Count Five of the third amended complaint (Docket Entry No. 51), the plaintiffs allege that the defendants' actions constitute a violation of Tenn.Code Ann. § 47–50–109.[18] In response, the defendants assert that this allegation fails to state a claim and, therefore, they are entitled to summary judgment on that particular claim. The plaintiffs have offered no reply to the defendants' contention.

The state statute at issue provides that procurement of breach of contracts is unlawful and reads in pertinent part as follows:

> It shall be unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto....

Tenn.Code Ann. § 47–50–109. This statute represents a codification of the state common law action for inducement to breach a contract. *Polk and Sullivan, Inc. v. United Cities Gas Co.*, 783 S.W.2d 538, 542 (Tenn. 1989); *Woods v. Helmi*, 758 S.W.2d 219, 224–25 (Tenn.App.1988). In Tennessee, a party cannot be liable for inducing his own breach

---

18. The Court notes that the plaintiffs state that the defendants' actions "constitute a refusal or failure to perform a lawful contract and thus are in violation of TCA [sic] Section 47–50–109." However, as discussed below, the statutory language does not encompass the mere refusal or failure to perform a contract; rather, it prohibits inducement or procurement of the breach, refusal or failure to perform any lawful contract by a party.

of contract. *Koehler v. Cummings,* 380 F.Supp. 1294, 1313 (M.D.Tenn.1974).

Pursuant to 12 U.S.C. § 1786(h)(1)(A), the Board appointed itself as conservator of AGEFCU, thereby taking over possession and control of the credit union's business and assets. The FCUA explicitly states that the Board shall, "by operation of law, succeed to (i) all rights, titles, powers, and privileges of the credit union," 12 U.S.C. § 1787(b)(2)(A), and that the Board may "perform all functions of the credit union in the name of the credit union." 12 U.S.C. § 1787(b)(2)(B)(iii). It is thus clear that any actions taken by the Board following its appointment as conservator of AGEFCU constituted exercise of the credit union's rights and performance of its functions.

■ Under Tennessee law, the plaintiff must prove the following elements in order to prevail in an action for inducement to breach a contract:

> (1) that there was a legal contract; (2) that the wrongdoer had sufficient knowledge of the contract; (3) that the wrongdoer intended to induce its breach; (4) that the wrongdoer acted maliciously; (5) that the contract was breached; (6) that the act complained of was the proximate cause of the breach; and (7) that damages resulted from the breach.

*TSC Indus., Inc. v. Tomlin,* 743 S.W.2d 169, 173 (Tenn.App.1987). Even if the state statute applied to the lawful repudiation of a collective bargaining agreement,[19] since the Board's repudiation was on AGEFCU's behalf, its actions are correctly attributed to AGEFCU rather than to the Board for the purpose of proving a violation of the state statute. Therefore, the Board can not be said to have induced AGEFCU to take any action.

In addition, because federal law provides that a contract may be lawfully repudiated by a conservator of a credit union, it is questionable that a number of the above-cited required elements can be established. For example, following a conservator's lawful repudiation of a contract, a legal, enforceable

contract no longer exists. A conservator which is acting pursuant to federal law can hardly be characterized as a "wrongdoer." Likewise, since a conservator acts in the best interests of the federal credit union, the plaintiff's burden of proving malice would appear to be insurmountable.

## VIII.

■ Included in the defendants' motion (Docket Entry No. 46) for partial summary judgment is their motion to strike portions of the plaintiffs' jury demand. Specifically, they contend that the plaintiffs are not entitled to a jury trial on the ERISA claims pursuant to 29 U.S.C. § 1132. The Court finds the defendants' contention to be well-taken.

The Sixth Circuit has held there is no right to a jury trial in actions for recovery of benefits pursuant to 29 U.S.C. § 1132. *Bair v. General Motors Corp.,* 895 F.2d 1094, 1096 (6th Cir.1990); *Daniel,* 839 F.2d at 268. The *Daniel* Court characterized an action seeking return of mistakenly paid contributions as an action for restitution, *id.,* which historically "seeks an equitable remedy for which there is no Seventh Amendment right to a jury trial." In *Bair,* the Court noted that the breadth of the denial of a right to jury set forth in *Daniel* encompasses all actions for recovery of benefits pursuant to 29 U.S.C. § 1132. *Bair,* 895 F.2d at 1096.

Accordingly, the defendants' motion to strike that portion of the plaintiffs' jury demand related to the cause of action pursuant to 29 U.S.C. § 1132 shall be granted.

## IX.

In summary, the Court's determination of the questions of law posed by the parties requires that the plaintiffs' motion for partial summary judgment be granted in part and denied in part. Likewise, the Court shall grant the defendants' motion for partial summary judgment in part and deny it in part. Defendants' motion (*see* motion for partial summary judgment filed August 17, 1993; Docket Entry No. 46) to strike those portions

---

19. The Court need not address this issue since the state statute is inapplicable in light of the fact that any actions taken by the Board were on behalf of AGEFCU.

of the plaintiffs' jury demand which relate to their cause of action pursuant to 29 U.S.C. § 1132 shall be granted.

An appropriate order shall be entered.

### ORDER

In accordance with the memorandum contemporaneously entered, the motion (filed August 17, 1993; Docket Entry No. 46) for partial summary judgment of the defendants, Auto Glass Employees Federal Credit Union (AGEFCU) and National Credit Union Administration Board (the Board) is granted in part and denied in part. In addition, the motion (filed September 20, 1993; Docket Entry No. 65) for partial summary judgment of the plaintiffs, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the Union), Martha Poston, Virginia Ligon, Sue Doss, Brenda Maley, Glynda Johnson, Tamala Lavender, Lucy Pinson, Janice Weatherly, Phyllis Law, Diane Armonat, and Mary Peoples is granted in part and denied in part.

Accordingly, the plaintiffs' claims based upon the defendants' repudiation of the collective bargaining agreement as an alleged violation of the National Labor Relations Act, as well as the plaintiffs' claims that the defendants violated the Federal Credit Union Act, are dismissed with prejudice. Likewise, the plaintiffs' claim that the defendants' actions violated their Fifth Amendment property right without due process is dismissed with prejudice.

In addition, the Court grants the defendants' partial summary judgment motion concerning the issue of whether the Union lacks standing to assert the individual plaintiffs' claims pursuant to 29 U.S.C. § 1132(a) and denies the plaintiffs' motion on that same issue. Based upon the evidence before the Court, the plaintiffs' motion for partial summary judgment on the issue of whether AGEFCU is a proper party defendant to the plaintiffs' claims under 29 U.S.C. § 1132 is granted, while the defendants' corresponding motion is denied.

Furthermore, the Court grants those portions of the defnedants' partial summary judgment motion relating to the preemption of plaintiff Lavender's state wrongful termination claim and the plaintiffs' failure to state a cause of action pursuant to Tenn.Code Ann. § 47–50–109.

Finally, the Court grants the defendants' motion (*see* motion for partial summary judgment filed August 17, 1993; Docket Entry No. 46) to strike those portions of the plaintiffs' jury demand which relate to their cause of action pursuant to 29 U.S.C. § 1132.

It is so ORDERED.