**1185 AVENUE OF The AMERICAS ASSOCIATES, Plaintiff–Appellant,**

v.

**The RESOLUTION TRUST CORPORATION, as receiver of Ensign Federal Savings Bank and Ensign Bank, F.S.B., Defendant–Appellee.**

No. 1267, Docket 93–7810.

United States Court of Appeals, Second Circuit.

Argued March 10, 1994.

Decided April 26, 1994.

Ronald W. Meister, New York City (Eaton & Van Winkle, Robert D. Popper; Wien Malkin & Bettex, Eli R. Matioli, of counsel), for plaintiff-appellant.

Kathleen Donelli, White Plains, New York, (Cuddy & Feder, of counsel), for defendant-appellee.

Before: LUMBARD, FEINBERG, and MINER, Circuit Judges.

LUMBARD, Circuit Judge:

Plaintiff 1185 Avenue of the Americas Associates ("Lessor") appeals an order of the District Court for the Southern District of New York (Martin, *Judge*) granting summary judgment to defendant Resolution Trust Corporation ("RTC"), as receiver of Ensign Federal Savings Bank and Ensign Bank, F.S.B. The district court held (1) that the RTC in its capacity as a receiver for a failed banking institution has the power to repudiate contracts within a reasonable period after its appointment as receiver even where the RTC immediately before had served as conservator for the same institution; and (2) that the RTC properly exercised its repudiation power. We affirm.

## I.

Lessor owns an office building at 1185 Avenue of the Americas in Manhattan. On December 2, 1988, Lessor and Ensign Federal Savings Bank ("Old Ensign") signed a lease (the "Lease") for the eighteenth floor of the building. The Lease ran from January 1, 1989 to April 30, 1999, with an annual base rent ranging from $493,750 for 1989 to $900,000 for 1996 through 1999. Old Ensign used the premises as its home office and headquarters.

On August 30, 1990, the Office of Thrift Supervision ("OTS") found Old Ensign to be insolvent and appointed the RTC as its receiver. On the same day, the OTS chartered Ensign Bank, F.S.B. ("New Ensign") and named the RTC as its conservator. New Ensign assumed all deposits and certain assets and liabilities of Old Ensign, including the Lease. As conservator of New Ensign, the RTC decided not to exercise its statutory power to repudiate the Lease, and used the premises as New Ensign's headquarters.

Almost a year later, on July 19, 1991, the RTC as conservator sold New Ensign to seven acquiring institutions; on the same day, the OTS declared New Ensign insolvent and named the RTC as its receiver. The sale agreements gave the acquiring institutions ninety days from the date of sale to

decide whether they wanted to assume certain leases held by New Ensign. Chemical Bank, one of the seven acquiring institutions, acquired much of New Ensign's assets in New York, including the right to the Lease. On August 16, 1991, Chemical Bank informed the RTC that it had elected not to exercise its option on the lease.

On October 18, 1991, the RTC, as receiver for New Ensign, notified Lessor that it had elected under 12 U.S.C. § 1821(e) to repudiate the Lease effective February 29, 1992. The RTC found itself unable to vacate by that date, and it continued to occupy the premises and pay rent until June 30, 1992. Lessor apparently did not object to this four-month delay.

On September 4, 1992, Lessor initiated this action against the RTC, as receiver for Old Ensign and New Ensign. Lessor sought (1) a declaration that the Lease was still in effect because the RTC's repudiation was not effective; (2) liquidated contract damages in excess of $7 million; and (3) damages in excess of $7 million under an estoppel theory. Both parties moved for summary judgment. On July 23, 1993, the district court granted summary judgment to the RTC on all claims, finding that the RTC's repudiation was valid under 12 U.S.C. § 1821(e), and that Lessor failed to state a claim for promissory estoppel. The court held that the RTC had a reasonable period from its appointment as receiver on July 19, 1991 to repudiate the Lease, and that the RTC repudiated the Lease within a reasonable period.

On appeal, Lessor argues: (1) that the RTC had a reasonable period for repudiation beginning on August 30, 1990 when it was appointed conservator, not beginning on July 19, 1991 when it was appointed receiver; and (2) that even if the period began on July 19, 1991, the district court erred in deciding on a motion for summary judgment that the RTC properly repudiated the Lease within a reasonable period from that date. We disagree, and affirm the judgment of the district court.

## II.

The RTC's October 18, 1991 repudiation was effective. The RTC's power of repudiation is supplied by section 212(e) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), which provides:

**(1) Authority to repudiate contracts**

In addition to any other rights a conservator or receiver may have, the conservator or receiver for any insured depository institution may disaffirm or repudiate any contract or lease—

**(A)** to which such institution is a party;

**(B)** the performance of which the conservator or receiver, in the conservator's or receiver's discretion, determines to be burdensome; and

**(C)** the disaffirmance or repudiation of which the conservator or receiver determines, in the conservator's or receiver's discretion, will promote the orderly administration of the institution's affairs.

**(2) Timing of repudiation**

The conservator or receiver appointed for any insured depository institution ... shall determine whether or not to exercise the rights of repudiation under this subsection within a reasonable period following such appointment.

12 U.S.C. § 1821(e) (Supp. IV 1992).

Lessor asserts that the "reasonable period" for repudiation begins when the RTC is first appointed as conservator or receiver, and that the October 18 repudiation—which came almost fourteen months after the RTC's appointment as conservator—was untimely. The RTC submits that § 1821(e) gives the conservator and receiver independent rights of repudiation and separate "reasonable periods" in which to make the decision. *See Resolution Trust Corp. v. Cedar-Minn Bldg. Ltd. Partnership,* 956 F.2d 1446, 1450–55 (8th Cir.) (upholding the RTC's view), *cert. denied,* —— U.S. ——, 113 S.Ct. 94, 121 L.Ed.2d 56 (1992). Consequently, the repudiation period was renewed when the RTC was appointed receiver on July 19, 1991. We agree.

"It is axiomatic that '[t]he starting point in every case involving construction of a statute is the language itself.'" *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985) (*quoting*

*Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring)). The language of § 1821(e), however, is ambiguous.

 When a statute is ambiguous, we generally defer to an interpretation given by the agency that administers the statute, so long as the interpretation is reasonable. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). The RTC therefore argues that we must limit our inquiry to whether its construction is reasonable. There is, however, an exception to the *Chevron* rule: "[W]here ... Congress has entrusted more than one federal agency with the administration of a statute ... a reviewing court does not ... owe as much deference as it might otherwise give if the interpretation were made by a single agency similarly entrusted with powers of interpretation." *Lieberman v. FTC,* 771 F.2d 32, 37 (2d Cir.1985). *Cf. Wachtel v. Office of Thrift Supervision,* 982 F.2d 581, 585 (D.C.Cir.1993) (according *no* deference to agency where more than one agency was charged with administering statute). *But cf. CedarMinn* at 1451 (according *full Chevron* deference to the RTC without noting that other agencies had similar power to administer statute). Because FIRREA is administered by several agencies in addition to the RTC, *see Wachtel* at 585, we do not owe full *Chevron* deference to the RTC's interpretation. We therefore turn to the question of which interpretation is most reasonable.

 The design and language of FIRREA as a whole indicate that Congress intended to provide conservators and receivers with independent powers of repudiation, even where the receiver previously served the same institution as conservator. Congress did not use the phrase "conservator or receiver" loosely. Throughout FIRREA, Congress used "conservator or receiver" where it granted rights to both conservators and receivers, and it used "conservator" or "receiver" individually where it granted rights to the RTC in only one capacity. *See CedarMinn* at 1451–52 n. 8, n. 9 (gathering examples throughout FIRREA). We therefore read § 1821 as providing both conservators and receivers with the right to repudiate.

We still must determine whether a receiver retains its right to repudiate in instances where the receiver has already served as conservator for the same institution. We believe that it does. Congress was aware when it enacted FIRREA that receivers of failed institutions frequently succeed conservators. *See CedarMinn* at 1454–55. We find no reason to assume that when Congress explicitly granted repudiation power to receivers, they implicitly excluded receivers that already served as conservators.

This interpretation of § 1821(e) provides conservators and receivers with the ability to use their repudiation power without compromising their distinct roles. A conservator of a failed thrift is empowered to take action to restore the thrift to a solvent position and "to carry on the business of the institution." 12 U.S.C. § 1821(d)(2)(D) (Supp. IV 1992). The conservator often will need the failed thrift's premises to operate the institution as an ongoing business. In contrast, a receiver is empowered to liquidate and wind up the institution's affairs. 12 U.S.C. § 1821(d)(2)(E) (Supp. IV 1992). The receiver may find no use for the lease that has been essential to the conservator's ability to operate the business. As the Eighth Circuit noted:

> The requirement that [the] RTC make the repudiation decision once and for all shortly after its first appointment as conservator would put [the] RTC in the untenable position of trying to operate the business as an ongoing concern with one hand, while at the same time calculating the lease repudiation issue as if it were shutting the business down.

*CedarMinn* at 1454.

Finally, we note that Chapter 3 of the Bankruptcy Code provides a helpful analogy. Like a conservator or receiver of a failed thrift, a trustee in bankruptcy has the power to "assume or reject any executory contract or unexpired lease of the debtor" within a limited time period (sixty days) following appointment. 11 U.S.C. § 365(a) & (d) (1988). Like the RTC, a trustee in bankruptcy may wear more than one hat. The trustee may first be appointed as a Chapter 11 trustee, which is analogous to a conservator. The Chapter 11 trustee eventually may be replaced by a Chapter 7 trustee, which is anal-

ogous to a receiver. As often happens when the RTC succeeds itself in a new role, the Chapter 7 trustee may be appointed after the initial repudiation period has lapsed. Nonetheless, courts have held that the Chapter 7 trustee has a new sixty-day period to decide whether to accept or reject contracts and leases. *See In re Tompkins,* 95 B.R. 722, 724 (9th Cir. BAP 1989); *In re Joyner,* 74 B.R. 618, 621 (Bankr.M.D.Ga.1987); *In re Butcher Shop & Deli, Inc.,* 45 B.R. 239, 240 (Bankr. S.D.Fla.1984). *Cf. International Trade Admin. v. Rensselaer Polytechnic Inst.,* 936 F.2d 744, 748 n. 1 (2d Cir.1991) (deciding case without "explor[ing] this open issue").

Lessor argues that providing receivers with a separate repudiation right will effectively eliminate the reasonable period requirement. Lessor asserts that the RTC will seek a change in its title whenever it wants a new chance to repudiate a contract or lease. However, there is no evidence of any abuse here.

 We therefore hold that the RTC has a reasonable period for repudiation following its appointment as receiver, even though it had previously acted as conservator for the same institution.

### III.

 The RTC repudiated within a reasonable time following its appointment as receiver on July 19, 1991. There is no genuine issue of fact as to whether the ninety-day delay until October 18 was reasonable. It is undisputed that the sale agreements gave each acquiring institution the option to assume certain leases within ninety days of the acquisition. It was not unreasonable for the RTC to have waited until the end of that period to notify leasing and contracting parties of the decision to repudiate.

 Lessor argues that even if the repudiation was timely, the RTC did not comply with § 1821(e)(1)(B), which states that a receiver or conservator can repudiate only those leases that it determines to be burdensome. Specifically, Lessor argues that the RTC has not submitted evidence demonstrating that it made the requisite finding that the lease was burdensome. We are not persuaded. First, there is no requirement that the conservator or receiver make a formal find-

ing that a lease or contract is burdensome. Second, it can hardly be said that it was not reasonable for the RTC to find that it would be burdensome for it to assume a $7 million obligation to pay rent on premises for which it no longer had use, at a time when the real estate market was declining. Third, whether the lease is burdensome is to be decided at the discretion of the conservator or receiver. 12 U.S.C. § 1821(e)(1)(B).

 Finally, Lessor lists a series of unanswered factual questions, and contends that summary judgment is not proper where there are unresolved questions of fact. This argument is meritless. Lessor's laundry list presents no genuine issue of material fact. A party "may not defeat a motion for summary judgment merely by pointing to a potential issue of fact; there must be a genuine issue of material fact." *City of Yonkers v. Otis Elevator Co.,* 844 F.2d 42, 45 (2d Cir.1988).

We have considered all of Lessor's remaining arguments and find them without merit. Affirmed.