FRANKLIN FINANCIAL, a New
Jersey general partnership,
Plaintiff–Appellee,

v.

RESOLUTION TRUST CORPORATION,
Receiver of Benjamin Franklin Federal
S & L Assoc., Defendant–Appellant.

FRANKLIN FINANCIAL, a New
Jersey general partnership,
Plaintiff–Appellant,

v.

RESOLUTION TRUST CORPORATION,
individually and in its capacities as con-
servator and receiver of Benjamin
Franklin Savings and Loan, Defendant–
Appellee. (Two Cases.)

FRANKLIN FINANCIAL, a New
Jersey general partnership,
Plaintiff–Appellee,

v.

RESOLUTION TRUST CORPORATION,
individually and in its capacities as con-
servator and receiver of Benjamin
Franklin Savings and Loan, Defendant–
Appellant.

Nos. 93–35699, 93–35777, 94–
35153 and 94–35235.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 10, 1995.

Decided April 24, 1995.

Dennis S. Klein, Hughes, Hubbard & Reed, Washington, DC, William R. Turnbow, Hershner, Hunter, Moulton, Andrews & Neill, Eugene, OR, for defendant-appellant-cross-appellee.

Barnes H. Ellis, Stoel, Rives, Boley, Jones & Grey, Portland, OR, for plaintiff-appellee-cross-appellant.

Before: PREGERSON and TROTT, Circuit Judges, and FITZGERALD,* Senior District Judge.

FITZGERALD, Senior District Judge:

## OVERVIEW

In these cases we decide whether the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821, allows the Resolution Trust Corporation ("RTC") to repudiate a lease 117 days after the RTC's appointment as receiver. We hold that it does and, therefore, reverse.

Defendant RTC, individually and in its capacity as receiver of the Benjamin Franklin Savings & Loan Association ("Franklin"), appeals from a judgment of the district court. The district court held on summary judgment that the RTC improperly repudiated the lease of Franklin's headquarters building owned by Franklin Financial Associates ("FFA"), and awarded FFA $6 million in damages. The RTC appeals from the district court's order that the repudiation of the lease was untimely and also raises numerous issues relating to damages. Because we find summary judgment should not have been granted in favor of FFA, we do not reach the damages issue. FFA crossappeals the district court's award of attorneys' fees to the RTC after determining that the RTC was a prevailing party in the Franklin I litigation after FFA voluntarily dismissed that action. We have jurisdiction for both appeals under 28 U.S.C. § 1291.

## BACKGROUND

Benjamin Franklin Savings & Loan was, for many years prior to 1990, a federally chartered savings and loan association headquartered in Portland, Oregon. In 1985, Franklin built a six-story office building ("the Property") to serve as its administrative headquarters. After its construction, Franklin sold the Property to an entity known as the "Madison Group," and then leased it back under a fifteen year lease ("the Lease") in a sale and lease back transaction. The Lease required Franklin to pay a monthly rental ranging from $253,125 to $281,250 and to pay all expenses associated with the Property.

FFA is a general partnership formed in 1986 for the purpose of purchasing the Property from the Madison Group for $31.5 million, $4.5 million of which was paid in cash and $27 million was borrowed from the U.S. Bank of Oregon and secured by a mortgage on the Property.

---

* The Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska; sitting by designation.

On February 20, 1990, the Office of Thrift Supervision ("OTS") issued a confidential order appointing the RTC as conservator for Franklin. The RTC assumed control over all of Franklin's assets, including the Property on February 21, 1990. Not until September 9, 1990, did the OTS formally appoint the RTC to act as Franklin's receiver. That same day, the RTC entered into a purchase and assumption transaction[1], an important part of which constituted a sale of most of Franklin's assets to the Bank of America Federal Savings Bank ("B of A").[2] Those assets included (1) an option to acquire any of Franklin's facilities either by purchasing owned facilities or by assuming the leases for leased facilities and (2) the right to occupy Ben Franklin's facilities for a short transitional period. This gave B of A a right to occupy the Property for 120 days with an option to assume the Lease within 90 days. The RTC later extended these periods to 180 days of occupancy and 120 days to exercise the option. In compliance with the purchase and assumption agreement, B of A paid FFA the full amount of rent due under the Lease during the period it occupied the property.

On November 7, 1990, the RTC notified FFA that it would repudiate the Lease if B of A did not exercise its option to assume the Lease. On November 9, 1990, FFA filed its complaint in case number CV–90–01148–DCA ("Franklin I"), requesting a declaration that the RTC could not repudiate the Lease and would remain obligated to pay rent for the remainder of the Lease's term.

On December 20, 1990, B of A notified the RTC that it would not exercise its option to assume the Lease and that it would soon vacate the Property. On January 4, 1991, the RTC notified FFA that it would repudiate the Lease effective March 7, 1991. FFA and B of A agreed to extend B of A's period of occupancy to March 31, 1991.

FFA was unable to locate a tenant to rent this special use property at a rate sufficient to cover the mortgage and operating expenses. Conversion to a multi-tenant general office space was not an economically viable option. Therefore, on April 1, 1991, FFA entered into an agreement with U.S. Bank of Oregon and Madison Partners to convey the Property to U.S. Bank to avoid foreclosure. In return, Madison Partners released FFA from its nonrecourse obligation in the approximate amount of $27 million and released FFA and its individual guarantors from $1 million of their recourse liability. FFA amended its complaint in Franklin I to assert a claim for breach of the Lease.

On April 8, 1991, FFA filed a claim with the RTC pursuant to 12 U.S.C. § 1821(d) seeking more than $12 million in damages for breach of the lease. That claim was denied by the RTC and FFA then filed the second of these consolidated actions, case number CV–91–01082–DCA, ("Franklin II").

In Franklin I, FFA asserted tort, contract, and takings claims against the RTC in its corporate capacity, in its capacity as conservator for Franklin, and in its capacity as receiver. The RTC moved to dismiss these claims for lack of subject matter jurisdiction. The district court declined to rule on the RTC's motion until after trial.

In Franklin II, FFA appealed the RTC's denial of its claim for damages for breach of the Lease and asserted related claims against the RTC in its corporate capacity. On motions for partial summary judgment, the court found that the RTC's repudiation was not undertaken within a reasonable period after appointment as receiver and therefore constituted a material breach of the Lease. After a bench trial FFA was awarded approximately $6 million in damages to be paid as an administrative expense pursuant

1. A general description of the mechanics and purposes of such a purchase and assumption transaction can be found in *Fed. Deposit Ins. Corp. v. Bank of Boulder*, 911 F.2d 1466, 1469–70 (10th Cir.1990), *cert. denied*, 499 U.S. 904, 111 S.Ct. 1103, 113 L.Ed.2d 213 (1991).

2. Franklin was, in many ways, an attractive institution to acquire. It has total assets of $4.5 billion and deposits of $3 billion, constituting a

10 percent market share of all Oregon retail deposits. Franklin was also the largest home mortgage lender in the Portland metropolitan area with about 12 percent of the market. B of A paid the RTC a premium of $162.3 million over the net asset values, reflecting the going concern value of the institution and the value of Franklin's deposit base.

to 12 C.F.R. § 360.2(a)(1) (1993) (subsequently redesignated as 12 C.F.R. § 360.3(a)(1)).

## DISCUSSION

### A. Standard of Review

■ We review a district court's grant of summary judgment de novo. *Jesinger v. Nevada Fed. Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether the district court correctly applied the relevant substantive law. *Id.*

### B. Timeliness of the RTC's Repudiation

■ The RTC has authority to repudiate burdensome contracts under section 212(e) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), which provides:

**(1) Authority to repudiate contracts**

In addition to any other rights a conservator or receiver may have, the conservator or receiver for any insured depository institution may disaffirm or repudiate any contract or lease—

**(A)** to which such institution is a party;

**(B)** the performance of which the conservator or receiver, in the conservator's or receiver's discretion, determines to be burdensome; and

**(C)** the disaffirmance or repudiation of which the conservator or receiver determines, in the conservator's or receiver's discretion, will promote the orderly administration of the institution's affairs.

**(2) Timing of repudiation**

The conservator or receiver appointed for any insured depository institution ... shall determine whether or not to exercise the rights of repudiation under this subsection within a reasonable period following such appointment.

12 U.S.C. § 1821(e).

■ In *1185 Avenue of Americas Assocs. v. Resolution Trust Corp.,* 22 F.3d 494, 498 (2nd Cir.1994), the Second Circuit concluded that a notification of the RTC's decision to repudiate ninety days after the RTC's appointment as receiver, but almost fourteen months after its appointment as conservator, fell within a "reasonable period" for purposes of § 1821(e)(2). *1185 Avenue* followed the Eighth Circuit's holding in *Resolution Trust Corp. v. CedarMinn Bldg. Ltd. Partnership,* 956 F.2d 1446, 1450–55 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 94, 121 L.Ed.2d 56 (1992), that section 1821(e) gives the conservator and receiver independent rights of repudiation and separate "reasonable periods" to make the decision. *1185 Avenue,* 22 F.3d at 496. We also agree that the statute provides for separate rights of repudiation for the conservator and the receiver.

FFA maintains in this appeal that the Property was critical to both the RTC and B of A because it provided access to Franklin's main store of information concerning the assets and liabilities of the institution.[3] FFA argues that they deserve to be compensated in an amount greater than the standard rent because access to the property was absolutely critical to B of A. FFA believes that the RTC, in deferring the decision of whether or not to repudiate the Lease to B of A, the RTC failed to evaluate the "burdensomeness" of the Lease within an early, "reasonable period" fair to FFA. The RTC argues that both the caselaw and the legislative history relating to § 1821(e) allowed the repudiation of the lease within a reasonable period without incurring millions of dollars of damages. On summary judgment, the court agreed in part with FFA and concluded that the RTC's repudiation of the Lease was not made within a "reasonable period" and awarded $6 million damages to FFA.

Congress did not define what constitutes a "reasonable period" of time. Instead, Con-

---

**3.** FFA also argues in a circumspect way that because the Property was critical for the efficient transition of accounts from Benjamin Franklin S & L to Bank of America, the Lease was not burdensome. We disagree and find *"[a]ny un*necessary payment is burdensome to an insolvent institution." *Morton v. Arlington Heights Federal Sav. & Loan Ass'n,* 836 F.Supp. 477, 485 (N.D.Ill.1993) (emphasis in the original).

gress granted broad discretion to both the conservator and receiver. For example, "the conservator or receiver ... *may* disaffirm or repudiate any ... lease.... 18 U.S.C. § 1821(e)(1)." And "the conservator or receiver ... *shall determine whether or not* to exercise the rights of repudiation ... within a reasonable period following such appointment." 18 U.S.C. § 1821(e)(2) (emphasis added).

Legislative history reveals that bankruptcy law was intended to be a model for FIR-REA's receivership/conservatorship scheme. *See Resolution Trust Corp. v. Diamond,* 18 F.3d 111, 122 (2nd Cir.) ("12 U.S.C. § 1821(e) was 'closely modeled on parallel provisions of section 365 of the Bankruptcy Code.'") (quoting S.Rep. No. 101–19, 101st Cong., 1st Sess., at 314), *vacated and remanded on other grounds sub nom., Solomon v. Resolution Trust Corp.,* — U.S. —, 115 S.Ct. 43, 130 L.Ed.2d 5 (1994). *See also, 1185 Avenue,* 22 F.3d at 497 ("we note that Chapter 3 of the Bankruptcy Code provides a helpful analogy" to a FIRREA receiver or conservator's authority to repudiate contracts). For at least one hundred years, bankruptcy trustees, as receivers have been able to repudiate contracts or leases. *See Sunflower Oil Co. v. Wilson,* 142 U.S. 313, 322, 12 S.Ct. 235, 237, 35 L.Ed. 1025 (1892).

In bankruptcy, the "reasonable period" is equitable in nature. *See In re GHR Energy Corp.,* 41 B.R. 668, 673 (Bankr.D.Mass.1984) (court imposes reasonable period based on "its inherent powers of equity"). We balance Congress's intention that the RTC "conduct its operations so as to maximize recovery on assets it acquires ... and minimize losses incurred in resolving cases" against the reasonable interests and expectations of the landlord. *See Diamond,* 18 F.3d at 112 (quoting S.Rep. No. 101–19, 101st Cong., 1st Sess. at 352 (1989)). The *CedarMinn* court pointed out, "Congress specifically directed the RTC to look closely at sale-leaseback transactions such as those at issue here." *CedarMinn,* 956 F.2d at 1455.

In detailing the repudiation power Title II provides for repudiation of real property leases. The disaffirmance of burdensome leases should take into account the total circumstances of the lease, including whether, in the case of a sale and lease

back, the lease was executed as part of an arm's length transaction.

*CedarMinn,* 956 F.2d at 1455 (quoting H.R. Conf. Rep. No. 101–209, 101st Cong. 1st Sess. 399 (1989)). While we find no impropriety in the transaction between Franklin and the Madison Group for the lease back and sale, the Congressional mandate is informative because it indicates the high degree of scrutiny required by the RTC in evaluating burdensome leases.

The magistrate judge's ruling was without the benefit of *1185 Avenue.* We find *1185 Avenue* helpful and well reasoned. In that case, ninety days passed between the time of RTC's appointment as receiver until its final decision to repudiate was announced. During the delay the acquiring institution had the option to assume certain leases within ninety days. The court there found that "[i]t was not unreasonable for the RTC to have waited until the end of that period to notify leasing and contracting parties of the decision to repudiate." *1185 Avenue,* 22 F.3d at 498. Likewise in this case, the RTC was appointed as receiver on September 9, 1990. Fifty-nine days later, on November 7, 1990, the RTC announced its intention to repudiate the Lease if B of A did not exercise its option to assume the Lease. Fifty-nine days was not an unreasonable delay for the RTC to determine that the Lease was burdensome to the RTC. On December 20, 1990, B of A stated it would not exercise its option to assume the Lease. By January 4, 1991, 117 days after its appointment as receiver, the RTC repudiated the Lease. We do not find a 117 day delay from appointment as receiver to announcement of repudiation to be an "unreasonable period" under the circumstances. The delay is not substantially greater than the ninety day delay in *1185 Avenue.* As we have noted, the RTC's announcement of its intention to repudiate should B of A not desire assuming the Lease, came just 59 days after its appointment as receiver. Nothing prevented FFA from negotiating independently with B of A at this time, or any time earlier. We find in this case that the RTC's obligation in resolving the financial affairs of failed financial institutions outweighs the expectations of the landlord, FFA. We conclude that the RTC repudiated the Lease within a "reasonable peri-

od" within the meaning of FIRREA and therefore we reverse.[4]

## C. Propriety of Award of Attorney Fees

 FFA cross-appeals the district court's award of RTC's attorneys' fees after a finding that the RTC was the prevailing party given FFA's voluntary dismissal of Franklin I under Fed.R.Civ.P. 41(a)(1). We have jurisdiction under 28 U.S.C. § 1291 and we generally review attorneys' fees awards for an abuse of discretion. *Holland v. Roeser*, 37 F.3d 501, 503 (9th Cir.1994). "However, any elements of legal analysis and statutory interpretation which figure in the district court's decisions are reviewed de novo." *Id.* (Citations and quotations omitted).

Both FFA and the RTC make claims for attorneys' fees pursuant to Article XXVII of the Lease and Or.Rev.Stat. § 20.096. Article XXVII of the Lease provides:

If suit or action is commenced to enforce compliance with any term, covenant or condition of this instrument, the party not prevailing shall pay to the prevailing party a sum which the trial judge determines is reasonable as attorneys' fees to be allowed in the suit or action, and if appeal is taken from any judgment or decree in the suit or action, the party not prevailing on the appeal shall pay to the prevailing party such further sum as the appellate court shall adjudge reasonable as attorneys' fees on appeal.

The Oregon statute states that if a contract provides for the payment of attorneys' fees and costs, then the prevailing party is entitled to reasonable attorneys' fees.

 We apply Oregon law in interpreting the attorneys' provision of the Lease. *See Resolution Trust Corp. v. Midwest Fed. Savings Bank of Minot*, 36 F.3d 785, 800 (9th Cir.1993) (applying California law in interpreting attorneys' fees provision in a contract involving FDIC). We "must apply state law in this situation unless (1) the claim for fees arose under some federal statute, or (2) the litigated issues involve not basic contractual enforcement question [sic], but issues peculiar to [federal law]." *Midwest Fed. Savings,*

36 F.3d at 800 (internal quotations and citations omitted).

The next inquiry, applying Oregon law, is whether a voluntary dismissal under Fed. R.Civ.P. 41(a)(1)(i) by FFA makes the RTC a "prevailing party." In *All Am. Distrib. Co. v. Miller Brewing Co.*, 736 F.2d 530 (9th Cir.1984), we determined that an Arizona statute did allow for a finding that a defendant was a prevailing party following a voluntary dismissal of claims by the plaintiff. Here, too, we do not find that the district court abused its discretion in awarding attorneys' fees in favor of the RTC. Nor can we say that the district court erred in its computation of the attorneys' fees. Finally, article XXVII of the Lease allows the prevailing party to recover attorneys' fees incurred on appeal. We remand to the district court for a determination of attorneys' fees in accordance with our holding.

**AFFIRMED in part and REVERSED in part and REMANDED.**

---

4. Because we reverse the grant of summary judgment in favor of FFA, we do not reach the numerous issues raised by both sides contesting the amount of damages awarded by the district court.