INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, LOCAL 737; Martha Poston; Virginia Ligon; Sue Doss; Brenda Maley; Glynda Johnson; Tamala Lavender; Lucy Pinson; Janice Weatherly; Phyllis Law; Diane Armonat; and Mary Peoples, Plaintiffs–Appellants,

v.

AUTO GLASS EMPLOYEES FEDERAL CREDIT UNION; National Credit Union Administration Board; and H. Allen Carver, Defendants–Appellees.

Nos. 94–6349, 94–6351.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 17, 1995.

Decided Jan. 9, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied Feb. 23, 1996.

Lynn Allen Agee (argued and briefed), Barclay M. Roberts (briefed), Agee, Allen, Godwin, Morris & Laurenzi, Memphis, TN, for Plaintiffs-Appellants.

C. Eric Stevens (argued and briefed), Jeffrey Zager, William R. O'Bryan, Jr., Trabue, Sturdivant & DeWitt, Nashville, TN, Jon J. Canerday, National Credit Union Administration, Alexandria, VA, for Defendants-Appellees.

Before: LIVELY, NELSON, and SUHRHEINRICH, Circuit Judges.

LIVELY, Circuit Judge.

This is an appeal by union members and their local union from summary judgment for the defendants in an action arising out of a conservator's repudiation of a collective bargaining agreement. The employer is a federal credit union, subject to the terms of the Federal Credit Union Act (the Act), 12 U.S.C. § 1751 *et seq.* (1988). Section 207 of the Act, 12 U.S.C. § 1787(c)(1) (1988 ed.

Supp. I), gives conservators specific authority to repudiate contracts:

> (c) **Provisions relating to contracts entered into before appointment of conservator or liquidating agent**
>
> (1) **Authority to repudiate contracts**
>
> In addition to any other rights a conservator or liquidating agent may have, the conservator or liquidating agent for any insured credit union may disaffirm or repudiate any contract or lease—
>
> (A) to which such credit union is a party;
>
> (B) the performance of which the conservator or liquidating agent, in the conservator's or liquidating agent's discretion, determines to be burdensome; and
>
> (C) the disaffirmance or repudiation of which the conservator or liquidating agent determines, in the conservator's or liquidating agent's discretion, will promote the orderly administration of the credit union's affairs.

This provision was added to the Act by section 1217(c) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub.L. No. 101–73 (1989).

There are three questions for decision by this court. First, whether the quoted provisions of the amended Act gave the conservator authority to repudiate a collective bargaining agreement. Second, if the conservator had such authority, whether the conservator exercised it in this instance within the permissible bounds of labor-management relations law. Third, whether the individual who made the decision to repudiate the collective bargaining agreement in issue was entitled to qualified immunity from a claim for money damages.

## I.

### A.

The defendant Auto Glass Employees Federal Credit Union (the Credit Union) operates in Nashville, Tennessee. Prior to December 1991 it entered into a collective bargaining agreement with Local 737 of the United Automobile, Aerospace and Agricul-

tural Implement Workers of America (Local 737 or the Union), which represented a majority of the Credit Union's nonmanagement employees. The Credit Union experienced financial problems and on December 16, 1991, while the collective bargaining agreement remained in effect, the defendant National Credit Union Administration Board (the Board) appointed itself conservator of the Credit Union pursuant to a provision of the Act. See 12 U.S.C. § 1786(h). As conservator, the Board assumed control of all the Credit Union's operations, and named the defendant H. Allen Carver, its regional director, to oversee management of the Credit Union.

Following establishment of the conservatorship, the Board instituted various changes in work rules and policies that the Union claimed were violations of the existing collective bargaining agreement. On March 13, 1992, the Board submitted to union representatives proposed modifications to the collective bargaining agreement. The Union promptly rejected the proposal, and on March 20, the Board repudiated the collective bargaining agreement. Thereafter, the Board implemented new wage rates and employee benefits, terminated the existing employee pension plan and distributed vested pension benefits to at least some of the plan beneficiaries.

### B.

Local 737 and eleven present or former employees of the Credit Union who were members of Local 737 filed this action in district court seeking, insofar as this appeal is concerned, two remedies. First, they sought a declaration that the Board's action violated their federal constitutional and statutory rights. Second, the plaintiffs asked for compensatory and punitive damages, costs and attorney fees.

After the plaintiffs filed several amended complaints, their principal claim was that the Board's repudiation of the collective bargaining agreement violated provisions of the National Labor Relations Act (NLRA). They also alleged that the Board's actions caused termination, constructive discharge or permanent lay-off of employee-plaintiffs in viola-

tion of their constitutional right to not be deprived of a property interest without due process of law. Two of the original defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6). This motion was referred to a magistrate judge who recommended granting dismissal to an improperly named defendant and to the defendant Carver. The plaintiffs only objected to the recommendation to dismiss Carver. Overruling the objection, the district court dismissed Carver as a defendant upon finding that the magistrate judge correctly determined that Carver had been sued in his individual capacity and was entitled to qualified immunity. The remaining defendants filed a motion for partial summary judgment, and the plaintiffs responded with a motion for partial summary judgment of their own.

In ruling on the cross-motions, the district court decided the principal issue that is the subject of this appeal. By later stipulation, the plaintiffs dismissed their remaining claims and the district court entered a final judgment.

### II.

The district court held that the language of the Act granting authority to conservators of federal credit unions to repudiate contracts is broad enough to include collective bargaining agreements. *International Union v. Auto Glass Employees Federal Credit Union*, 858 F.Supp. 711, 718 (M.D.Tenn.1994). The court pointed out that collective bargaining agreements are not excepted from the language authorizing repudiation and found no reason to exclude such contracts by implication. *Id.*

The district court discussed *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), in which the Supreme Court held that a provision of the Bankruptcy Code (11 U.S.C. § 365(a)) authorizing trustees to repudiate "executory contracts," permitted a debtor-in-possession to repudiate a collective bargaining agreement "upon an appropriate showing." *Id.* at 516, 104 S.Ct. at 1191. Congress overruled *Bildisco* in a 1984 amendment that prohibits the unilateral repudiation of collective bargaining

agreements by a trustee or a bankrupt debtor-in-possession absent compliance with explicit conditions. See Pub.L. No. 98–353, § 541(a) (codified as amended at 11 U.S.C. § 1113 (1988)). The district court found that this congressional action recognized the importance of collective bargaining agreements, but that it was not decisive of the issue in the present case. The district court noted that when Congress granted contract repudiation authority to conservators of federal credit unions in 1989, it neither excluded nor provided conditions applicable only to collective bargaining agreements. *Auto Glass,* 858 F.Supp. at 719. The district court apparently felt that, having examined the right of repudiation only five years earlier in considering *Bildisco,* Congress was aware that, absent specific language excluding collective bargaining agreements, a broad authorization to repudiate contracts would be construed to include such agreements. See *id.* at 719. The district court also concluded that the stricter standard for repudiation in bankruptcy proceedings was inapplicable to repudiation under the Act. *Id.* at 719–20.

Further, the district court held that under the terms of the collective bargaining agreement, the employees had no property right in continued employment that was entitled to due process protection. *Id.* at 720–21.

### III.

#### A.

On appeal the plaintiffs assert that the Credit Union and the Board began violating the collective bargaining agreement shortly after the conservator assumed control by dealing directly with employees who were union members and unilaterally changing some of the conditions of employment. They also insist that the defendants did not offer to negotiate new terms. Instead, the Board presented to the Union a proposed list of changes and indicated that unless the Union agreed to the changes, the conservator would repudiate the collective bargaining agreement.

The defendants' actions, the plaintiffs say, violated sections 7 and 8 of the NLRA, 29 U.S.C. §§ 157, 158 (1988). Section 7 guarantees employees the right to organize and bargain collectively, and section 8 prohibits as an unfair labor practice any action by an employer that interferes with rights guaranteed by section 7. A refusal to negotiate with a union over proposed changes in a collective bargaining agreement is an unfair labor practice. See 29 U.S.C. § 158(d).

Finally, the plaintiffs argue that Carver unlawfully deprived the individual employees of their rights under the NLRA and the Fifth Amendment by ordering the repudiation of the collective bargaining agreement. Because in the plaintiffs' view these rights were clearly established under the NLRA, Carver was not entitled to qualified immunity.

#### B.

The defendants respond that they acted within their clear authority under the Act. Before entering the order of conservatorship, according to the defendants, they determined this step was necessary in order to conserve the assets of the Credit Union and to protect the interests of its members. The Credit Union was in a precarious financial condition, and one of the causes of this condition was its higher-than-normal operating costs, the largest of which was for employee compensation. When the Board attempted to rehabilitate the Credit Union by making changes in work conditions the Union took the position that the changes violated the collective bargaining agreement. Then, when the Board proposed changes in the collective bargaining agreement that would effect economies, the Union rejected these proposals. The defendants aver that this sequence of events leading up to the repudiation order is uncontradicted. Thus, they say, the conditions found by the conservator permitted repudiation, and the Union did not attempt to negotiate. Instead, it flatly rejected the Board's proposals.

The Board makes a "plain meaning" argument in response to the plaintiffs' contention that the Act does not authorize the repudiation of collective bargaining agreements. Section 1787(c)(1) authorizes a conservator to repudiate "any contract" upon making certain determinations. These determina-

tions—that a contract is "burdensome" and its repudiation "will promote the orderly administration of the credit union's affairs"— are to be made in the conservator's discretion. 12 U.S.C. § 1787(c)(1)(B), (C). Thus, according to the defendants, the language of the statute does not permit a construction that exempts collective bargaining agreements from the reach of a conservator's authority to repudiate contracts.

The defendants also argue that there is no basis for implying the existence of such an exemption. Congress enacted FIRREA more than 50 years after enacting the NLRA. The defendants maintain that Congress did not overlook the centrality of collective bargaining in labor relations, but instead determined that in certain situations rights of employees created by the NLRA would have to give way to rights of investors and other members of a credit union.

In addition, Carver contends that his dismissal on qualified immunity grounds cannot be overturned. He says that the plaintiffs did not carry their burden to plead and prove the existence of a clearly established constitutional or statutory right that Carver allegedly violated. He argues that the district court properly applied the "reasonable official" test and determined that Carver could not be found individually liable to the plaintiffs in damages for repudiating the collective bargaining agreement.

## IV.

■■■ This appears to be a case of first impression with respect to whether 29 U.S.C. § 1787(c)(1) grants a conservator of a federal credit union authority to repudiate a collective bargaining agreement between the credit union and its employees' certified union. We review a district court's construction of a statute de novo. *United States v. Brown*, 915 F.2d 219, 223 (6th Cir.1990) (citations omitted). We review an order granting summary judgment under the same standard. *Brooks v. American Broadcasting Cos.*, 932 F.2d 495, 500 (6th Cir.1991) (citation omitted).

### A.

■■■ We agree with the defendants and the district court on the primary question. The language of 12 U.S.C. § 1787(c)(1) unequivocally grants authority to conservators to repudiate "any contract" if the conservator determines that the statutory conditions have been met. This authority is to be exercised in the conservator's discretion. If the plain language of a statute is unambiguous, the express terms used by the legislature are conclusive. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (citation omitted); *Baum v. Madigan*, 979 F.2d 438, 442 (6th Cir.1992) (citation omitted). Our conclusion that "any contract" includes collective bargaining agreements is buttressed by the fact that the Act contains provisions qualifying the Board's repudiation authority over some specific types of contracts, but there is no such provision with regard to collective bargaining agreements. See 12 U.S.C. § 1787(c)(4)-(8), (11). Nor is the term "contract," as used in 12 U.S.C. § 1787(c)(1), specifically defined anywhere in the Act. Since collective bargaining agreements are clearly "contracts," the plain language of the Act authorizes the Board as conservator to repudiate collective bargaining agreements.

We do not disagree with the plaintiffs' statement that collective bargaining agreements are central to labor-management relations and differ in some respects from ordinary commercial contracts. See *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 550, 84 S.Ct. 909, 914, 11 L.Ed.2d 898 (1964). We believe, however, that Congress' inclusion of the repudiation authorization for conservators in the Act without an exception for collective bargaining agreements demonstrates a congressional intent to give "any contract" its ordinary meaning.

■■■ It is a settled principle of statutory construction that when Congress drafts a statute, courts presume that it does so with full knowledge of the existing law. *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32, 111 S.Ct. 317, 325, 112 L.Ed.2d 275 (1990) (citing *Cannon v. University of Chicago*, 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560 (1979)). Accordingly, "[w]hen

two statutes conflict the general rule is that the statute last in time prevails as the most recent expression of the legislature's will." *Boudette v. Barnette,* 923 F.2d 754, 757 (9th Cir.1991) (citation omitted). The fact that Congress revised the Bankruptcy Code in 1984 to exempt collective bargaining agreements from a contract repudiation provision similar to the provision at issue here simply indicates to us that Congress knew how to draft such an exemption. See Pub.L. No. 98–353, § 541(a). Had Congress intended to afford similar protection to collective bargaining agreements in the context of the Act, it would have explicitly done so when it enacted the contract repudiation provision as part of FIRREA.

FIRREA was enacted to respond to a national emergency threatening many federally-insured and federally-created financial institutions. H.R.Rep. No. 101–54(I), 101st Cong. 1st Sess. 291–308, *reprinted in* 1989 U.S.C.C.A.N. 87–104. The crisis environment in which the repudiation authority was granted is demonstrated by the additional provisions of the amendment directing the Board as conservator to make a decision concerning repudiation "within a reasonable period" following its appointment, 12 U.S.C. § 1787(c)(2), and empowering conservators to "take *any* action authorized by [the Act], which the Board determines is in the best interests of the credit union, its account holders, or the Board." 12 U.S.C. § 1787(b)(2)(G) (emphasis added). It was within Congress' legislative authority to determine, in light of the emergency it addressed in enacting FIRREA, that rights it had created in earlier legislation should be subordinated to other rights threatened by that emergency.

**B.**

■ We consider next the plaintiffs' alternative argument that even if the Act does authorize the repudiation of a collective bargaining agreement, the Supreme Court's decision in *Bildisco* mandates some consideration of how the rights guaranteed to employees under the NLRA will be affected before a collective bargaining agreement may be unilaterally repudiated. In

*Bildisco,* the Court held that while the Bankruptcy Code gave a bankruptcy trustee repudiation authority over a collective bargaining agreement, such an agreement could be repudiated only if a bankruptcy court found the following: (1) that the debtor demonstrated that the collective bargaining agreement burdens the estate; (2) that the equities balance in favor of rejecting the labor contract; (3) that reasonable efforts to negotiate a voluntary modification had been made without success; and (4) that bankruptcy policy would be served by the rejection. *Bildisco,* 465 U.S. at 526–27, 104 S.Ct. at 1196–97. Thus, the question presented by the plaintiffs is whether the *Bildisco* decision imposes a heightened standard of consideration for the repudiation of a collective bargaining agreement in the context of conservatorships under the Act.

The district court found that *Bildisco*'s repudiation standard was inapplicable to the repudiation in the instant case because of differences between the Bankruptcy Code and the Act. The court noted that unlike § 365(a) of the Bankruptcy Code, 12 U.S.C. § 1787(c) requires no court approval prior to the repudiation of a contract by a conservator. *Auto Glass,* 858 F.Supp. at 719–20; see 12 U.S.C. § 1787(c)(1)(B), (C). Further, the court found it significant that § 365(a) of the Bankruptcy Code lacked a standard for repudiation, whereas the Act explicitly provides such a standard. *Auto Glass,* 858 F.Supp. at 720; see 12 U.S.C. § 1787(c)(1)(B), (C).

We agree that the *Bildisco* Court set out specific standards for the repudiation of collective bargaining agreements because it was faced with a statute that provided no guidance as to the circumstances under which a contract could be repudiated. See 11 U.S.C. § 365(a). Here, however, we are presented with a situation in which Congress has explicitly chosen to vest sole discretion to repudiate a "burdensome" contract in the hands of a credit union's conservator or liquidating agent when the conservator or liquidating agent determines that repudiation would "promote the orderly administration of the credit union's affairs." 12 U.S.C. § 1787(c)(1)(B), (C). When Congress enacted 12 U.S.C. § 1787(c), it was certainly aware

of *Bildisco* as well as the special statutory procedure for the repudiation of a collective bargaining agreement under 11 U.S.C. § 1113, but apparently found no need to incorporate similar protections for labor contracts into the Act. As the defendants point out, § 1787(c) simply reflects a legislative judgment "that the conservator of a failing credit union should be given broader powers than a trustee or debtor-in-possession of a private enterprise."

Moreover, the purpose of the Act, enacted in 1934, was to provide a workable system of credit for people of "small means" in order to spur economic recovery. *Branch Bank & Trust Co. v. National Credit Union Admin. Bd.*, 786 F.2d 621, 625–26 (4th Cir.1986) (citing S.Rep. No. 583 73d Cong., 2d Sess. 1 (1934)), *cert. denied,* 479 U.S. 1063, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987). The repudiation powers given to a conservator under § 1787(c) are consistent with this underlying purpose of the Act, given the precarious condition of many financial institutions that provided credit for people of "small means" (e.g., thrift associations and credit unions) at the time of FIRREA's enactment. Thus, the district court correctly concluded that the *Bildisco* standard for repudiation should not be imported into the Act. See *Crandon v. United States,* 494 U.S. 152, 168, 110 S.Ct. 997, 1006, 108 L.Ed.2d 132 (1990) (where Congress uses language in a particular section of an act that is in "harmony with what is thought to be the spirit and purpose of the act," there is no reason to depart from statutory language).

We are troubled by the Board's unilateral repudiation of all terms and conditions of the agreement based solely on its determination that the credit union's "compensation expense" was unduly burdensome. Although no court has addressed the issue of whether there was an adequate showing of "burden" before the repudiation of a contract under the Act, it is useful to examine the issue under the repudiation provision of the Federal Deposit Insurance Act (FDIA), 12 U.S.C. § 1821(e) (1988 ed. Supp. I), enacted at the same time as 12 U.S.C. § 1787(c) as part of FIRREA and which closely tracks its lan-

guage. See Pub.L. No. 101–73, § 212(e) (codified as amended at 12 U.S.C. § 1821(e)).

Under the FDIA, courts have uniformly held that a conservator or receiver has complete discretion in making the decision to repudiate and need not make any formal findings as to whether a contract is "burdensome" or a repudiation is "necessary to promote orderly administration." *1185 Ave. of the Americas Assocs. v. Resolution Trust Corp.,* 22 F.3d 494, 498 (2d Cir.1994); *Hennessy v. F.D.I.C.,* 58 F.3d 908, 920 (3d Cir. 1995); *Monrad v. F.D.I.C.,* 62 F.3d 1169, 1172 (9th Cir.1995); see also *Howell v. F.D.I.C.,* 986 F.2d 569, 572 (1st Cir.1993) ("[a] litigant would normally have an uphill battle in overturning an FDIC finding of 'burden'...."). Because nothing in § 1787(c) requires specific findings to support repudiation, and given the expansive language granting repudiation authority to conservators, we find that the Board as conservator acted within its authority in repudiating a collective bargaining agreement it found burdensome.

## V.

█ The plaintiffs also sought a declaration that the Board's action in repudiating the collective bargaining agreement violated their constitutional right to due process. The district court held that a private contract cannot create a property interest entitled to due process protection. *Auto Glass,* 858 F.Supp. at 720. Although we agree with the district court's conclusion that the Board's action in terminating the collective bargaining agreement did not infringe the plaintiffs' due process rights, we reach this conclusion on the basis of different reasoning.

The Supreme Court has recognized that property interests protected by the Fifth Amendment may be created by virtue of purely private contractual agreements. *Greene v. McElroy,* 360 U.S. 474, 492, 493 n. 22, 79 S.Ct. 1400, 1411, 1412 n. 22, 3 L.Ed.2d 1377 (1959); *Brock v. Roadway Express,* 481 U.S. 252, 260–61, 107 S.Ct. 1740, 1746–47, 95 L.Ed.2d 239 (1987); *F.D.I.C. v. Mallen,* 486 U.S. 230, 240, 108 S.Ct. 1780 1787, 100 L.Ed.2d 265 (1988). In *Roadway Express,* a plurality of the Supreme Court accepted the

premise that a private employer's right to discharge an employee for cause, pursuant to a collective bargaining agreement, was a property interest protected by the Fifth Amendment. *Roadway Express*, 481 U.S. at 260–61 n. 2, 107 S.Ct. at 1747 n. 2. There, a discharged employee of a trucking company was reinstated after the Secretary of Labor found reasonable cause to believe that he was the victim of a retaliatory discharge. *Id.* at 255–56, 107 S.Ct. at 1744–45. Given the employer's contractual right to discharge its employees for cause, the Court determined that the employer had been deprived of its "property" without due process because it had not been informed of the substance. of the evidence supporting the employee's allegations. *Id.* at 260–65, 107 S.Ct. at 1746–49.

This court reached the same conclusion in *Mertik v. Blalock*, 983 F.2d 1353, 1360 (1993), where we stated: "*Roadway Express* makes clear that a private contractual right can constitute a property interest entitled to due process protection from governmental interference under federal constitutional law." Here a government official, Carver, interfered with a private contractual relationship by making the decision to repudiate the collective bargaining agreement on behalf of a government agency, the Board. Thus, we must determine whether the collective bargaining agreement in the present case created a property interest in continuing employment.

The plaintiffs must demonstrate a "legitimate claim of entitlement" to continued employment based on the collective bargaining agreement in order to prevail. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Here, the plaintiffs have pointed to nothing in the collective bargaining agreement at issue which gave assurances of continued employment at the Credit Union, and they do not claim that any other "rules or understandings" gave them a reasonable expectation that their termination would only be for good cause. Cf. *Chilingirian v. Boris*, 882 F.2d 200, 203 (6th Cir.1989) (at-will public employees have no property interest in continued employment). The agreement merely contained provisions that gave employees the right to have their complaints heard in a grievance procedure and the right to discuss their discharge with the Union and management prior to leaving the worksite. Although the non-exhaustive list of management rights in the collective bargaining agreement included the right to discharge employees for "just cause," no provision explicitly promised that the Credit Union would not discharge its employees without cause. Compare *Johnston–Taylor v. Gannon*, 907 F.2d 1577, 1581 (6th Cir.1990) and *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.1991) (finding that collective bargaining agreements which explicitly guaranteed continuing employment gave rise to property interests).

■ We further note that under Tennessee law, employees hired for an indefinite term can be terminated with or without cause absent an express or implied contract altering their status as at-will employees. See *Gregory v. Hunt*, 24 F.3d 781, 785–86 (6th Cir.1994); *Bennett v. Steiner–Liff Iron and Metal Co.*, 826 S.W.2d 119, 121 (Tenn. 1992); *Graves v. Anchor Wire Corp. of Tennessee*, 692 S.W.2d 420, 421–22 (Tenn.App. 1985). Because we find that the plaintiffs did not have a property interest in continued employment, the Due Process Clause of the Fifth Amendment was not implicated in their termination. This being so, the plaintiffs failed to demonstrate the existence of a clearly established constitutional right that Carver violated by repudiating the collective bargaining agreement without notice to the plaintiffs and an opportunity to be heard.

## VI.

■ We now consider the claims against the defendant Carver. Accepting the magistrate judge's recommendation, the district court granted Carver qualified immunity and dismissed all claims against him. Because we agree with the district court's conclusion that Carver was entitled to qualified immunity, we affirm the dismissal. We review the district court's decision de novo. *Vaughn v. United States Small Business Admin.*, 65 F.3d 1322, 1325 (6th Cir.1995).

■ Government officials performing discretionary functions "generally are shield-

ed from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Once a government official raises the defense of qualified immunity, the plaintiffs must plead and prove with some particularity the existence of a clearly established right that the official is alleged to have violated. *Dominque v. Telb,* 831 F.2d 673, 676 (6th Cir.1987). Whether immunity attaches depends upon the "objective reasonableness of an official's conduct, as measured by reference to clearly established law...." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. The official is entitled to dismissal before discovery is completed if the facts as alleged do not support a claim of violation of clearly established law. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). To determine whether a right has been clearly established, we look to "the federal constitutional, statutory, and case law existing at the time of the challenged action." *Rodgers v. Jabe,* 43 F.3d 1082, 1085 (6th Cir.1995) (citation omitted).

The plaintiffs' pleadings and proof do not clearly identify the basis of their claim against Carver, but they relied on two arguments in the district court. First, they contended that the repudiation by Carver without prior negotiations violated their clearly established collective bargaining rights under NLRA. As we pointed out in Part IV A, however, Congress authorized conservators of federal credit unions to repudiate "any contract." Since we concluded that this authority covered collective bargaining agreements, Carver acted within statutory authority when he repudiated the agreement in this case.

The plaintiffs have cited no case holding that the unilateral repudiation of a collective bargaining agreement pursuant to authority granted by Congress violates a right established by the NLRA, and we have found none. As we concluded in Part IV A, in the case of federal credit unions and other federally-funded and insured institutions covered by FIRREA, Congress determined that the economic emergency addressed in that statute required the subordination of some employee rights to the larger purpose of securing the resources and investments of credit unions and their members. The plaintiffs totally failed to demonstrate the existence of any clearly established federal statutory right that Carver violated.

The plaintiffs' second contention, that Carver violated their constitutional right to due process is not clearly articulated. As we construe their argument, it is that the collective bargaining agreement created a "property interest" that could not be taken away without some sort of notice and hearing. The claimed property interest is not identified. We assume the property interest consists of a right not to be terminated from their employment. As we demonstrated in Part V, however, they had no such property right. Again, we find that the plaintiffs failed to identify the clearly established constitutional right which they claim Carver violated.

We conclude that the plaintiffs failed to carry their burden to plead or prove the clearly established right they claim Carver violated by repudiating the collective bargaining agreement. Thus, under *Dominque v. Telb,* the district court properly accepted the magistrate judge's recommendation and dismissed Carver as a defendant. See also *Veney v. Hogan,* 70 F.3d 917 (6th Cir.1995) (dismissal proper if plaintiff fails to carry pleading burden either in the original complaint or in response to defendant's assertion of qualified immunity defense).

The judgment of the district court dismissing all claims is **AFFIRMED.**